STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
WILLIAM GRUNOW, A/K/A WILLIAM BANKS,
DEFENDANT-RESPONDENT.

Argued October 22, 1985—Decided March 12, 1986.

*Boris Moczula,* Deputy Attorney General, argued the cause for appellant (*Michael R. Cole,* Acting Attorney General of New Jersey, attorney).

*John J. Barry,* argued the cause for respondent (*Wolff & Samson,* attorneys).

The opinion of the Court was delivered by

O'HERN, J.

Defendant was tried to a jury for capital murder. The jury acquitted the defendant of murder but convicted him of aggravated manslaughter. On appeal, the Appellate Division reversed the conviction because the instructions to the jury impermissibly shifted the burden of proof to defendant to establish that the act was "committed in the heat of passion resulting from a reasonable provocation" (*N.J.S.A.* 2C:11–4(b)(2)) so as to reduce murder to manslaughter. 199 *N.J.Super.* 241, 246–49 (1985). (For convenience, hereafter we refer to this statutory

element as "passion/provocation.") In the Appellate Division's view, the incorrect charge "had the clear capacity to lead the jury to a wrong verdict." *Id.* at 249. We granted the State's petition for certification, 101 *N.J.* 293 (1985), to consider its assertion that it was harmless error to have shifted the burden of proof to defendant to establish the passion/provocation defense since the jury convicted defendant of aggravated manslaughter, an offense that could not be mitigated by passion/provocation. We agree that aggravated manslaughter is not reduced to manslaughter by passion/provocation, but we disagree with the State that the jury's verdict conclusively established that it was not misled by the charge. Hence we affirm the judgment directing a new trial.

The case arises from a love triangle that resulted in death. Only certain details of the final events preceding the death are in doubt. Defendant employed the victim's wife. She was allegedly torn between her employer and her husband, Michael Moylen. Defendant induced Moylen to visit premises that defendant had rented for Moylen's wife to occupy. An argument or an ambush ensued resulting in Moylen's death. Subsequently, the State charged the defendant with knowing and purposeful murder of Michael Moylen. Defendant testified at his trial that the encounter between the two had resulted in a violent emotional confrontation during which Moylen attacked him, and that in resisting the violent assault he mortally wounded Moylen, and thereafter defendant lost control of his reason and mutilated the body. The victim's body had been brutally assaulted with a metal bar, repeatedly stabbed with a garden pick, dismembered, and buried in a sealed steel drum.

Depending upon which version of the events the jury believed, it conceivably could have convicted defendant of capital murder, aggravated manslaughter, or manslaughter, or it could have acquitted him on all charges on a theory of self-defense. The jury convicted defendant of aggravated manslaughter. Defendant was sentenced to twenty-years imprisonment, with a ten-year term of parole ineligibility.

We emphasize at the outset that by this opinion we do not intend to resolve all of the extraordinarily complex factual and legal issues that may arise in the context of a mutual exchange of violent force that results in death. Hence, we do not address in detail the considerations of what factual circumstances will limit the availability of self-defense when the actor either has provoked the use of force against himself or can avoid the necessity of using deadly force by retreating, *N.J.S.A.* 2C:3–4(b)(2)(a) and (b). Nor do we address the specific circumstances that might give rise to a legally-cognizable defense based on passion/provocation under *N.J.S.A.* 2C:11–4(b)(2) or the availability of an imperfect self-defense to mitigate murder to manslaughter.

In assessing the validity of this conviction, we focus our review upon two issues:

(1) whether, as a matter of law, the crime of aggravated manslaughter is reduced to manslaughter when it is committed in the heat of passion resulting from a reasonable provocation, and

(2) if the answer to (1) is "no," whether an erroneous instruction on the burden of proving whether the homicide was committed in the heat of passion resulting from reasonable provocation may be considered harmless.

(1) *Is aggravated manslaughter reduced to manslaughter when committed in the heat of passion resulting from a reasonable provocation?*

■ To answer this question, it is necessary to review the development of the structure of the Code of Criminal Justice, *N.J.S.A.* 2C:1–1 to :98–4 and the Code's treatment of criminal homicide.[1] Chapter 11 of the Code of Criminal Justice provides that causing the death of another human being purposely,

---

[1]To assist in this analysis, we have attached, as an Appendix to this opinion, a comparison of the relevant provisions.

knowingly, or recklessly shall be treated as criminal homicide. *N.J.S.A.* 2C:11-2(a). The Code divides criminal homicide into three categories: murder, manslaughter, and death by auto. *N.J.S.A.* 2C:11-2(b). There are three forms of murder: purposeful, knowing, and in the course of committing or attempting to commit certain felonies. *N.J.S.A.* 2C:11-3(a). There are three forms of manslaughter: aggravated, reckless, and passion/provocation. *N.J.S.A.* 2C:11-4(a) and (b). Criminal homicide caused by one's driving a vehicle recklessly is death by auto. *N.J.S.A.* 2C:11-5. For purposes of sentence and punishment, the Code grades criminal homicide as follows: murder is a crime of the first degree. A person convicted of murder must be sentenced to a minimum term of thirty years before being eligible for parole. *N.J.S.A.* 2C:11-3(b). Certain murders are capital murders, which are subject to a separate proceeding to determine whether the defendant should be sentenced to death. *N.J.S.A.* 2C:11-3(c)(1). Aggravated manslaughter occurs "when the actor recklessly causes death under circumstances manifesting extreme indifference to human life." *N.J.S.A.* 2C:11-4(a). It is a crime of the first degree. *N.J.S.A.* 2C:11-4(c). Reckless manslaughter and passion/provocation manslaughter are second-degree crimes. *N.J.S.A.* 2C:11-4(b) and (c). It is the definition of passion/provocation manslaughter that provokes the issue here since it is only "murder under section 2C:11-3" that is expressly reduced to manslaughter if "committed in the heat of passion resulting from a reasonable provocation." *N.J.S.A.* 2C:11-4(b)(2).

In this case we deal only with purposeful and knowing murder.[2] An illustration may serve to show the verdicts, other than acquittal, that were available to the jury under the language of the Code and the degrees of punishment related thereto:

---

[2]Despite the language of the Code, it has been held that felony murder is not reduced to manslaughter by passion/provocation. *See State v. Arriagas*, 198 *N.J.Super.* 575, 583 (App.Div.), *certif. granted*, 101 *N.J.* 266 (1985).

Purposeful or
Knowing Murder
(first-degree;
death or term up
to life imprisonment
with minimum 30-year
parole ineligibility)

Aggravated
Manslaughter
(first-degree;
20 to 10 year term
of imprisonment with
possible 10-year
parole ineligibility)

Reckless
Manslaughter
(second-degree;
10 to 5 year term of
imprisonment with
possible 5-year
parole ineligibility)

*committed in "heat of passion"*

Passion/Provocation
Manslaughter
(second-degree;
10 to 5 year term of
imprisonment with
possible 5-year
parole ineligibility)

The Appellate Division found that "[i]t would be contrary to pre-Code law and lead to [an] absurd result that a defendant charged with murder would be eligible to have the crime reduced to second-degree provocation/passion manslaughter but a defendant charged with the lesser offense of first-degree aggravated manslaughter would not." 199 *N.J.Super.* at 251 This argument has an inherent logic; nevertheless it conflicts with the language of the statute, and does not fully reflect other substantive changes in the development of the Code.

The drafters of the New Jersey Penal Code proposed four categories of murder: (1) criminal homicide committed purposely, 2C:11–3(a)(1); (2) criminal homicide committed knowingly, 2C:11–3(a)(2); (3) criminal homicide committed "recklessly under circumstances manifesting extreme indifference to the value of human life," 2C:11–3(a)(3); and (4) felony murder, 2C:11–3(a)(4). *Final Report of the New Jersey Criminal Law Revi-*

*sion Comm'n* (Oct.1971), Vol. I, at 50. They described the nature of the proposed crime of reckless murder as follows:

> where recklessness should be assimilated to knowledge * * *[,] [t]he conception employed is that of extreme indifference to the value of human life. The significance of purpose or knowledge is that, cases of provocation apart, it demonstrates precisely such indifference. Whether recklessness is so extreme that it demonstrates similar indifference is not a question that, in our view, can be further clarified; it must be left directly to the trier of the facts. If recklessness exists but is not so extreme, the homicide is manslaughter.
>
> [*Final Report,* Vol. II, at 156.]

Under pre-Code law our statutes merely provided the punishment for manslaughter, *N.J.S.A.* 2A:113–5, *repealed by L.* 1978, *c.* 95, § 2C:98–2, leaving its definition to the common law. Under the common law of New Jersey, "extreme indifference" homicide was second-degree murder. *State v. Gardner,* 51 *N.J.* 444, 457–58 (1968).

As originally enacted, the Code made no provision for any form of reckless murder; it provided for only reckless manslaughter. *L.* 1978, *c.* 95, § 2C:11–4(a)(1). Professor Knowlton, Chairman of the Commission, explained:

> The statute departs significantly from the commission report in two respects. The first is the elimination of reckless murder. This is highly desirable since a homicide is murder if it is committed knowingly. The element of "recklessness" requires personal awareness of the risk and a conscious disregard of it, while the term "knowingly" requires the actor to be "practically certain that his conduct will cause such a result." These two factors codify degrees of culpability for homicide: the more stringent one of "knowingly" is more suitable for murder because of its greater sanction; "recklessness" killings are properly made manslaughter.
>
> [Knowlton, *Comments Upon the New Jersey Penal Code,* 32 *Rutgers L.Rev.* 1, 9 (1979) (footnotes omitted).]

In the consensus amendments of 1979, section 2C:11–4 was amended to divide manslaughter between aggravated manslaughter and reckless manslaughter depending upon the presence of "circumstances manifesting extreme indifference to human life." *L.* 1979, *c.* 178, § 2C:11–4(a).[3]

---

[3]The 1979 amendments defined aggravated manslaughter as "when the actor other than purposely or knowingly causes death under circumstances manifesting extreme indifference to human life," *L.* 1979, *c.* 178, § 2C:11–4(a); a 1981

However, the argument that it was merely a legislative oversight that passion/provocation is not explicitly available to mitigate aggravated manslaughter under the new Code may not fully reflect the accompanying changes that the Legislature made in reducing the offense from murder to manslaughter. The history of the Code also reveals that the Legislature made a very substantial departure from certain fundamental underlying premises of the Commission with respect to individual responsibility for criminal conduct. In some instances the Commission would have viewed penal responsibility in terms of individual or subjective levels of criminal consciousness. The Legislature, on the other hand, has tended to view criminal culpability on collective or objective levels of responsibility.

Hence, the Code as enacted provides that criminal homicide constitutes manslaughter only when "committed in the heat of passion resulting from a reasonable provocation," *N.J.S.A.* 2C:11-4(b)(2), as opposed to the Commission's recommendation of "under the influence of extreme mental or emotional disturbance for which there is reasonable explanation or excuse." *Final Report*, Vol. I, at 51, § 2C:11-4(a)(2). In addition to expanding the mitigating mental or emotional disturbance to include unprovoked reactions, the manslaughter section proposed by the Commission would have provided that the reasonableness of the explanation or excuse would "be determined from the viewpoint of a person in the actor's situation under the circumstances as he believes them to be." *Id.* This proposal was rejected by the Legislature in favor of a resolution substantially in the current form. The narrowing of the scope of the defense of passion/provocation has been balanced, however, by the reduction in grade of the unintentional homicide reflecting extreme indifference to human life from murder to manslaughter.

---

amendment, however, substituted "recklessly" for "other than purposely or knowingly" in 2C:11-4(a). *L.* 1981, *c.* 290, § 2C:11-4(a).

In addition, as originally presented, the Criminal Law Revision Commission's concepts of justification also would have been framed in terms of subjective evaluation. The Commission proposed:

> The justification provisions * * * of the Code have been so framed that when the actor believes the force that he employs is necessary for any of the purposes which may establish a justification, his belief affords him a defense although it is erroneous, subject to the qualification of Section 2C:3-9 that when "the actor is reckless or negligent in having such belief or in acquiring or failing to acquire any knowledge or belief which is material to the justifiability of his use of force," he may be convicted of "an offense for which recklessness or negligence, as the case may be, suffices to establish culpability." These provisions assure that homicides in self-defense, defense of others, defense of property, effectuation of arrest or crime prevention, where the actor's belief in the necessity rests on unreasonable grounds, must be approached as crimes of recklessness or negligence, if they are crimes at all. Such homicides, accordingly, are manslaughter at most under the Code—whether or not there was intent to kill.
>
> [*Final Report*, Vol. II, at 163.]

Taken together, these provisions would have drawn a careful balance between individual culpability and collective security from crime by penalizing the actor who is reckless or negligent in forming the mental state that guided his conduct, exposing the actor to criminal liability for any grade of crime for which such mental state would suffice.

As noted, the legislative sponsors of the Code substantially altered the subjective view of mitigation or justification. They returned to the common law concepts of objectively reasonable reactions to both provocation and the need for self-defense. At the same time the Legislature recognized the inconsistency of treating as murder a criminal homicide that was not knowing, purposeful, or committed in the course of a felony.[4] The

---

[4]Even after the restructuring of the proposed Code, anomalies remained. For example, the proposed Code included a crime of negligent homicide that would have been categorized as a third-degree crime. *Final Report*, Vol. I, at 51, § 2C:11-5. The Legislature declined to enact this recommendation. Nevertheless, *N.J.S.A.* 2C:3-9(b), since repealed, provided that a negligent belief that one was being provoked so as to justify committing serious bodily harm would sustain a conviction for negligent homicide. The anomaly resulted

composite result represents a balance between the subjective ranges of criminal responsibility proposed by the Commission and the Legislature's desire to return to objective levels of responsibility.

The structure is not without precedent. New York has an offense, similar to aggravated manslaughter, characterized as "depraved mind murder," which is murder in the second degree, *N.Y. Penal Law* § 125.25(2); the element of mental culpability required to establish depraved mind murder is recklessness. New York also has an affirmative defense of "act[ing] under the influence of extreme emotional disturbance." *Id.* § 125.-25(1)(a). This "extreme emotional disturbance" defense is a broad replacement for the "heat of passion" doctrine; if established, it will mitigate a knowing or purposeful murder to manslaughter. *Id.* No such mitigation is provided for the offense of "depraved mind murder," however, and the New York courts have recognized this. *See People v. Wingate,* 72 *A.D.*2d 955, 422 *N.Y.S.*2d 245, 246 (App.Div.1979); *see also People v. Register,* 90 *A.D.*2d 972, 456 *N.Y.S.*2d 562 (App.Div. 1982), *aff'd,* 60 *N.Y.*2d 270, 280, 457 *N.E.*2d 704, 709, 469 *N.Y.S.* 2d 599, 603 (1983), *cert. denied,* 466 *U.S.* 953, 104 *S.Ct.* 2159, 80 *L.Ed.*2d 544 (1984) (intoxication not a defense to depraved mind

---

from the fact that the Code made no provision for negligent homicide. (*See* Appendix). This led Knowlton to observe:

> By its terms, the literal effect of [section 2C:3–9(b) ] is to limit a defense that does not exist. * * * [A]ssume an unreasonable belief in the necessity of killing in self-defense. Under the self-defense section, the defense is not available because it requires a reasonable belief. In these circumstances the actor commits murder because to him it is a purposeful killing. If section 2C:3–9(b) applies, however, the act is a criminal homicide only insofar as the killing is reckless, because the generalized negligent homicide has been replaced by a death by automobile statute. The significant difference is that the justification focuses upon its own elements, and the absence of one such element negates the defense, while section 2C:3–9(b) focuses upon the definition of the crime once the actual belief is established.

[Knowlton, *Comments Upon the New Jersey Penal Code,* 32 *Rutgers L.Rev.* 1, 5 (1979) (footnote omitted).]

murder because this crime is "distinguishable from manslaughter, not by the mental element involved but by the objective circumstances in which the act occurs"). Connecticut and Oregon, like New Jersey, classify "extreme indifference" homicide as manslaughter in the first degree. *Conn. Gen.Stat.* §§ 53a to 55; *Or.Rev.Stat.* § 163.118. The language of neither statute provides for mitigation of that offense to manslaughter in the second degree. While we can agree that there may be reasons to conclude that aggravated manslaughter should be mitigated by passion/provocation, we do not believe that those reasons are compelling enough to conclude that our Legislature did not consider this in structuring the law of homicide.

In light of the Legislature's stiffening of the Code in other areas with respect to subjective elements of offenses, it is logical to assume that having downgraded the crime of "extreme indifference" reckless homicide from murder to manslaughter, the Legislature would rest content with that determination. After all, depending upon the circumstances of the offense, we are dealing only with a difference in sentencing range, and presumably the sentencing judge will consider the mitigating factors under the Code, specifically the following two factors: whether "[t]he defendant acted under a strong provocation" and whether "[t]here were substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense." *N.J.S.A.* 2C:44–1(b)(3) and (4).

In short, in rearranging the highly complex provisions of the Code, both in terms of the substantive definition of offenses and the justification for acts that would otherwise constitute offenses, the Legislature downgraded "extreme indifference" reckless homicide from murder to aggravated manslaughter, but, at the same time, eliminated the concept of negligent homicide. The Legislature recognized a single concept of reckless homicide that constituted manslaughter, with the gradation of punishment based upon the degree of risk of death. *State v. Curtis,* 195 *N.J.Super.* 354, 364 (App.Div.), *certif. denied,* 99 *N.J.* 212 (1984). Within this framework, the legislative scheme, as

enacted, does not inevitably reflect an oversight with respect to the treatment of passion/provocation. The Legislature could have concluded, on the basis of common experience, that passion/provocation usually causes an intentional reaction and that it is rare for passion/provocation to lead to recklessness. The pre-Code analogue of passion/provocation manslaughter was referred to as "voluntary manslaughter," which typically involved an intentional killing rather than one committed recklessly. *State v. Powell,* 84 *N.J.* 305, 311 (1980).

Since the scheme is plausible, we are not certain that the Legislature overlooked the matter; rather, we believe that it could have concluded that the role of passion/provocation is not so much a matter of reclassifying an "extreme indifference" reckless criminal homicide as it is a means of reducing the severity of the penalty. Generally speaking, the Legislature is presumed to be "thoroughly conversant with its own legislation * * *." *Brewer v. Porch,* 53 *N.J.* 167, 174 (1969). Hence, we hold on the basis of the language and structure of the act that the Code does not provide that the passion/provocation defense be invoked to reduce aggravated manslaughter to simple manslaughter.

(2) *Is an incorrect instruction on the burden of proving whether a homicide was committed in the heat of passion resulting from reasonable provocation harmless error when the jury returns a verdict of guilt on an offense not mitigated by passion/provocation?*

 At the outset, we are satisfied that the Appellate Division correctly resolved the question of whether the jury charge, taken in its entirety, may have correctly stated the law. *See State v. Coruzzi,* 189 *N.J.Super.* 273, 310–11 (App.Div.), *certif. denied,* 94 *N.J.* 531 (1983), *appeal dismissed,* —— *U.S.* ——, 105 *S.Ct.* 56, 83 *L.Ed.*2d 8 (1984). The principal error was found in the passion/provocation manslaughter portion of the charge:

The provocation must be so gross as to cause the ordinary reasonable man to lose his self control and use violence with fatal results and you must be satisfied beyond a reasonable doubt that the defendant was in fact deprived of

his self control and under the stress of the provocation that confronted him and that he committed the crime while so deprived.

The defect in this charge is that it suggests to the jury that the defendant bears a burden to prove beyond a reasonable doubt the presence of reasonable provocation. In *State v. Powell, supra,* 84 *N.J.* 305, we explained the obligation of the trial court in a case in which the evidence warrants a passion/provocation charge:

[A] trial judge must make the State's burden clear by instructing the jury that to find [murder] it must be convinced beyond a reasonable doubt that the accused did not kill * * * in the heat of passion caused by inadequate provocation * * *.

[*Id.* at 315 (footnote omitted).]

The Appellate Division noted that although the model jury charge does not expressly refer to the burden of proof, it does not require proof beyond a reasonable doubt that defendant committed the act in the heat of passion upon a reasonable provocation.

If you are satisfied beyond a reasonable doubt that the defendant knowingly or purposely caused the victim's death, but you have a reasonable doubt as to whether he did so in the heat of passion upon a reasonable provocation, then you must find the defendant guilty of manslaughter.

[199 *N.J.Super.* at 247 (quoting model charge).] 5

The State contends that any error was cured when, after defendant objected, a follow-up instruction was given before the jury retired. However, six hours into deliberations, the jury asked to be recharged on several issues including passion/provocation. In its recharge the court repeated the instruction set out above. Defense counsel objected once again to the provocation instruction, but the objection was overruled. We agree with the Appellate Division that the combination of events had the capacity to mislead the jury as to the burdens of proof. *See State v. Gardner, supra,* 51 *N.J.* at 456 ("[t]he

---

5Still, this form of charge, by not expressly referring to the burden of proof, may inadequately convey to the jury that the prosecution must prove beyond a reasonable doubt every fact necessary to constitute the crime of murder, including the absence of reasonable provocation. The model jury charge should be revised to conform more closely to *Powell* and the dictates of *Mullaney v. Wilbur,* 421 *U.S.* 684, 95 *S.Ct.* 1881, 44 *L.Ed.*2d 508 (1975).

charge as given expressed an erroneous legal doctrine affecting the substantial rights of the defendant and was of a sufficiently grievous nature to have the clear capacity to bring about an unjust result").

The essence of the State's further argument on this point is that since the jury returned a verdict of guilt on aggravated manslaughter, an offense that we conclude cannot be mitigated by passion/provocation, it follows that the erroneous instruction had no effect upon the jury's verdict and is therefore harmless. This argument, however, assumes one major premise that we cannot accept: it assumes that the jury inevitably proceeded on a step-by-step basis to consider murder first, and then aggravated manslaughter. In the instruction sheets, the trial court suggested such a pattern, directing the jury that if it found the defendant guilty of any other of the offenses, it need proceed no further with its deliberations. However, even the trial judge realized the jury's freedom. He said:

> All right, ladies and gentlemen, you can see there are four possible questions as I said to you, although embodied within those four, there is, obviously, the fifth choice, which is not guilty, and that is embodied in each question. * * * You do not have to start with my question number one, which you can see deals with murder. You can start with one of the others, however you want.

The verdict sheet that was furnished to us shows, in fact, that the jury returned a verdict of not guilty on murder and guilty on aggravated manslaughter and made no entry with respect to the other available verdicts: reckless manslaughter, passion/provocation manslaughter or innocence. Nonetheless, we cannot assume that while in the jury room the jury proceeded in the chronology or on the step-by-step basis that the verdict sheet suggests.

The State contends that the jury, having acquitted the defendant of murder, would have no occasion to consider provocation. Unlike the verdict in *State v. Vujosevic*, 198 *N.J.Super.* 435 (App.Div.1985), this verdict does not leave us with an abiding certainty that the error was harmless. In *Vujosevic* the jury's conviction of the defendant on aggravated manslaughter, the greater of the two available verdicts, convinced

the court that had the jury entertained any doubt about the offense, it would have found the lesser verdict. Hence, failure to charge on aggravated assault was harmless on "the unusual facts here." *Id.* at 446; *cf. State v. Selby,* 183 *N.J.Super.* 273 (App.Div.1981) (failure to charge jury with second-degree murder and manslaughter is not harmless error when jury convicts of first-degree murder, kidnapping, and abduction).

In *State v. Hardison,* 99 *N.J.* 379 (1985), we examined the way in which the case was presented to the jury, not to determine what the verdict established, but rather to decide what it did not establish. The question there was whether the jury's general verdict of guilty of conspiracy embraced a completed offense of which the two defendants were acquitted. The form of the jury verdict was but one of several relevant factors, including the jury's request for further instructions on conspirator's liability and the prosecutor's statement on a motion to set aside the conspiracy verdict. All of these factors pointed to a conspiracy conviction related to the offense of which they were convicted. *Id.* at 390–91. We said that "[b]ased upon this record, we cannot conclude that the judgments establish that the preparatory conduct proven had other or further criminal objectives than the completed robbery." *Id.* at 391.

*State v. Sinclair,* 49 *N.J.* 525 (1967), held that a jury's return of a guilty verdict on felony murder did not render harmless an erroneous refusal to charge second-degree murder. *Id.* at 540–41. The principle is a familiar one and was expressed by Justice Proctor thus: "[I]f on the evidence it would not be *idle* to have the jury decide whether defendants committed an unlawful homicide other than in the course of an attempt to rob, it is error not to charge the possibility of a verdict of second degree murder." *Id.* at 540. The point of *Sinclair* was that felony murder established the pre-Code first-degree status of the murder. But under pre-Code law, once shown, murder was presumed to be a crime of the second degree not subject to the death penalty. Failure to charge on the possibility of

second-degree murder barred the jury from considering whether the defendants committed an unlawful homicide other than in the course of an attempt to rob. *Id.* at 540–43.

The tradition of the common law does not permit us to speculate upon the foundations of a jury verdict. "[A]n individualized assessment of the reason for [a jury verdict] would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake." *United States v. Powell,* 469 *U.S.* ——, ——, 105 *S.Ct.* 471, 478, 83 *L.Ed.*2d 461, 469 (1984). This springs from the unique role of the jury in the criminal process. *See id.* at ——, 105 *S.Ct.* at 475–78, 83 *L.Ed.*2d at 467–69; *see also United States v. Maybury,* 274 *F.*2d 899, 902–03 (2d Cir.1960) (at common law, like trial by ordeal, "the verdict of a jury was equally inscrutable").

 We have always placed an extraordinarily high value on the importance of appropriate and proper jury charges to the right to trial by jury. Erroneous instructions on matters or issues material to the jurors' deliberations are presumed to be reversible error. *State v. Collier,* 90 *N.J.* 117, 122–23 (1982) (citing *State v. Green,* 86 *N.J.* 281, 291 (1981)). The right to a trial by jury includes certain intangible but real benefits to a defendant that are lost whenever the jury is induced to think incorrectly in terms of guilt. *State v. Ingenito,* 87 *N.J.* 204, 217 (1981). So paramount is the duty to insure a fair trial that a jury must deliberate in accordance with correct instructions even when such instructions are not requested by counsel. Unless a chosen trial strategy dictates against it, and perhaps in some cases even when that is the case, the court ordinarily has a supervening responsibility to charge the jury concerning any version of the offense "clearly indicate[d]" by the evidence to require proper jury consideration. *State v. Choice,* 98 *N.J.* 295, 299 (1985). So solemn is the jury's responsibility that we do not permit it to be misled by consideration of issues not proper for its deliberation. *State v. Christener,* 71 *N.J.* 55,

72–73 (1976). "This judicial obligation, to assure the jury's impartial deliberations upon the guilt of a criminal defendant based solely upon the evidence in accordance with proper and adequate instructions, is at the core of the guarantee of a fair trial." *State v. Simon*, 79 *N.J.* 191, 206 (1979) (citations omitted).

We recognize that our holding on the availability of passion/provocation to mitigate aggravated manslaughter will raise practical problems in presenting the issues to the jury on the retrial since the defendant cannot be retried for murder. We believe, however, that if the evidence presented at the retrial warrants, the court can clarify that passion/provocation manslaughter may be an available verdict if the jury finds from the evidence that the State has proven the elements of that offense beyond a reasonable doubt.

For the reasons stated, the judgment of the Appellate Division is affirmed. The matter is remanded for new trial in accordance with this opinion.

*For affirmance—*

Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed* —None.

# APPENDIX

| COMMISSION'S PROPOSED CODE | CODE OF CRIMINAL JUSTICE |
|---|---|
| **SECTION 2C 11-3. MURDER.**<br><br>a Except as provided in Section 2C·11-4a(1), criminal homicide constitutes murder when:<br>(1) it is committed purposely; or<br>(2) it is committed knowingly; or<br>(3) it is committed recklessly under circumstances manifesting extreme indifference to the value of human life;<br>(4) it is committed when the actor, acting either alone or with one or more other persons, is engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit [an enumerated felony] and in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant, if there be any, causes the death of a person other than one of the participants * * *<br>* * * *<br><br>b Murder is a crime of the first degree * * * . | **2C 11-3 Murder**<br><br>a Except as provided in Section 2C:11-4 criminal homicide constitutes murder when:<br>(1) The actor purposely causes death or serious bodily injury resulting in death; or<br>(2) The actor knowingly causes death or serious bodily injury resulting in death; or<br>(3) It is committed when the actor, acting either alone or with one or more other persons, is engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit [an enumerated felony] and in the course of such crime or of immediate flight therefrom, any person causes the death of a person other than one of the participants * * * .<br>* * * *<br><br>b. Murder is a crime of the first degree * * * . |
| **SECTION 2C.11-4. MANSLAUGHTER.**<br><br>a. Criminal homicide constitutes manslaughter when:<br>(1) it is committed recklessly; or<br>(2) a homicide which would otherwise be murder is committed under the influence of extreme mental or emotional disturbance for which there is reasonable explanation or excuse. The reasonableness of such explanation or excuse shall be determined from the viewpoint of a person in the actor's situation under the circumstances as he believes them to be.<br>b. Manslaughter is a crime of the second degree | **2C:11-4. Manslaughter**<br><br>a. Criminal homicide constitutes aggravated manslaughter when the actor recklessly causes death under circumstances manifesting extreme indifference to human life.<br>b. Criminal homicide constitutes manslaughter when:<br>(1) It is committed recklessly, or<br>(2) A homicide which would otherwise be murder under section 2C.11-3 is committed in the heat of passion resulting from a reasonable provocation.<br>c. Aggravated manslaughter is a crime of the first degree. Manslaughter is a crime of the second degree. |
| **SECTION 2C 11-5. NEGLIGENT HOMICIDE.**<br><br>a. Criminal homicide constitutes negligent homicide when it is committed negligently under circumstances manifesting extreme indifference to the value of human life<br>b. Negligent homicide is a crime of the third degree. | **2C:11-5 Death by auto**<br><br>a. Criminal homicide constitutes death by auto when it is caused by driving a vehicle recklessly.<br>b. Death by auto is a crime of the third degree. |
| **SECTION 2C.3-9. MISTAKE OF LAW AS TO UNLAWFULNESS OF FORCE OR LEGALITY OF ARREST; RECKLESS OR NEGLIGENT USE OF EXCESSIVE BUT OTHERWISE JUSTIFIABLE FORCE; RECKLESS OR NEGLIGENT INJURY OR RISK OF INJURY TO INNOCENT PERSONS.**<br><br>a. The justification afforded by Sections 2C·3-4 to 2C:3-7, inclusive, is unavailable when. | **2C 3-9 Mistake of law as to unlawfulness of force or legality of arrest; reckless or negligent use of excessive but otherwise justifiable force; reckless or negligent injury or risk of injury to innocent persons**<br><br>a The justification afforded by sections 2C:3-4 to 2C:3-7 is unavailable when: |

(1) the actor's belief in the unlawfulness of the force or conduct against which he employs protective force or his belief in the lawfulness of an arrest which he endeavors to effect by force is erroneous; and

(2) his error is due to ignorance or mistake as to the provisions of the Code, any other provisions of the criminal law or the law governing the legality of an arrest or search.

b. When the actor believes that the use of force upon or toward the person of another is necessary for any of the purposes for which such belief would establish a justification under Sections 2C:3-3 to 3-8 but the actor is reckless or negligent in having such belief or in acquiring or failing to acquire any knowledge or belief which is material to the justifiability of his use of force, the justification afforded by those Sections is unavailable in a prosecution for an offense for which recklessness or negligence, as the case may be, suffices to establish culpability.

c. When the actor is justified under Sections 2C:3-3 to 3-8 in using force upon or toward the person of another but he recklessly or negligently injures or creates a risk of injury to innocent persons, the justification afforded by those Sections is unavailable in a prosecution for such recklessness or negligence towards innocent persons.

(1) The actor's belief in the unlawfulness of the force or conduct against which he employs protective force or his belief in the lawfulness of an arrest which he endeavors to effect by force is erroneous; and

(2) His error is due to ignorance or mistake as to the provisions of the criminal law or the law governing the legality of an arrest or search.

b. ~~When the actor believes that the use of force upon or toward the person of another is necessary for any of the purposes for which such belief would establish a justification under sections 2C:3-3 to 2C:3-8 but the actor is reckless or negligent in having such belief or in acquiring or failing to acquire any knowledge or belief which is material to the justifiability of his use of force, the justification afforded by these sections shall not prevent the actor being found guilty of an offense for which recklessness or negligence, as the case may be, suffice to establish culpability.~~ Deleted by amendment (P.L 1981, c. 290).

c. When the actor is justified under sections 2C:3-3 to 2C:3-8 in using force upon or toward the person of another but he recklessly or negligently injures or creates a risk of injury to innocent persons, the justification afforded by those sections is unavailable in a prosecution for such recklessness or negligence towards innocent persons

---

## SECTION 2C:3-4. USE OF FORCE IN SELF-PROTECTION

a. Use of Force Justifiable for Protection of the Person. Subject to the provisions of this Section and of Section 2C:3-9, the use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

b. Limitations on Justifying Necessity for Use of Force.
* * * *

(2) The use of deadly force is not justifiable under this Section unless the actor believes that such force is necessary to protect himself against death or serious bodily harm; nor is it justifiable if:

(a) the actor, with the purpose of causing death or serious bodily harm, provoked the use of force against himself in the same encounter * * * .
* * * *

## 2C:3-4. Use of force in self-protection

a. Use of force justifiable for protection of the person. Subject to the provisions of this section and of section 2C:3-9, the use of force upon o toward another person is justifiable when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion

b. Limitations on justifying necessity for use of force.
* * * *

(2) The use of deadly force is not justifiable under this section unless the actor reasonably believes that such force is necessary to protect himself against death or serious bodily harm, nor is it justifiable if:

(a) the actor, with the purpose of causing death or serious bodily harm, provoked the use of force against himself in the same encounter * * * .
* * * *

(emphasis supplied)