615 A.2d 671

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. ANDREW SPENCER MONTI, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued October 1, 1992—Decided November 10, 1992.

Before Judges BRODY, LANDAU and THOMAS.

*Adolph J. Galluccio* argued the cause for appellant (*Browne & Galluccio*, attorneys; *Adolph J. Galluccio*, of counsel and on the brief).

*Jeffrey L. Weinstein*, Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo*, Attorney General, of counsel and on the letter brief).

The opinion of the court was delivered by

BRODY, J.A.D.

This appeal requires us to explore the elements of the crime of criminal coercion, *N.J.S.A.* 2C:13–5.

Peter Camamis constructed several garage-like buildings on his highway property. He otherwise was using the property as a junk yard, dealing primarily with scrapped automobiles. One day Edmond Booker, a professional "hit man," entered Camamis's office on the property pretending to be interested in leasing

one of the buildings. After Camamis told Booker his name, Booker drew a handgun and demanded all the cash in his wallet. Camamis complied. Booker then ordered Camamis at gunpoint to enter an automobile that was on the premises and lie down on its front seat. Camamis complied. Booker then shot a single bullet into the fleshy part of Camamis's thighs. The bullet pierced one thigh and came to rest just before exiting the other. Booker fled in Camamis's personal automobile but was soon apprehended by the police.

When Booker drove away, Camamis, despite his wounds, ran from the automobile in which he had been shot and telephoned the police. An alert police officer soon spotted Camamis's automobile and arrested Booker. Booker immediately confessed. He also agreed to aid in apprehending defendant, who he claimed had agreed to pay him to break Camamis's legs. At the direction of the police, Booker telephoned defendant and directed him to pay two men the balance due for what he had done to Camamis. When the two men came by, defendant paid them as directed, not realizing that they were police officers.

Defendant operated an automobile leasing business almost directly across the highway from Camamis's office. Camamis's sister owned the property, which defendant occupied under a 10-year lease. Camamis had written the lease and signed it, purportedly acting on his sister's behalf. Thereafter, disputes arose between defendant and Camamis. Camamis objected to various ways defendant was using the property and defendant objected to Camamis's failure to provide various improvements which he contended Camamis was obliged to make under the terms of lease. Tension between the two, which intensified over time, led to an eviction action that was unresolved at the time of trial. Camamis's sister had brought the action. She claimed that her brother did not have her authority to enter into the lease.

Frustrated and angered by what he considered just grievances against Camamis, defendant erected a billboard on his

property that read, "Help, being run out of business." Defendant told his story to a customer who expressed an interest after seeing the billboard. Defendant testified that the customer offered to put him in touch with someone who would frighten Camamis into "backing off." With the customer's aid, defendant engaged Booker for $3,000. Booker's credentials, it now appears, included convictions for armed robbery and attempted murder.

Booker and defendant were tried together. Booker's "defense" was little more than a willingness to testify against defendant and hope for the best at sentencing. The main factual issue at trial was whether defendant had hired Booker to break Camamis's legs as Booker testified or, as defendant testified, merely to threaten Camamis with unspecified harm if he and his sister continued their efforts to evict him.

Booker testified that before performing his part of the agreement, he felt sorry for Camamis and decided not to break his legs with a bat, which he explained was the proper way of carrying out his assignment. Instead, he forced Camamis to lie still on the seat of the automobile so that he could carefully inflict only a minor bullet wound.[1] Booker testified that he took Camamis's money to create the false impression that the encounter was nothing other than a robbery.[2]

Defendant testified that the preliminary arrangements for

---

[1] Camamis spent a day in the hospital, where the bullet was removed from just beneath the surface of the skin. According to defendant's adult presentence report, Camamis stated that he lost three weeks from work. It is apparent from their statements at the sentencing hearing, however, that Camamis and members of his family were deeply distraught by the incident.

[2] The jury acquitted Booker of second-degree aggravated assault. *N.J.S.A.* 2C:12–1b(1) (attempting to cause or causing serious bodily injury). However, they found him guilty of third-degree aggravated assault. *N.J.S.A.* 2C:12–1b(2) (causing bodily injury with a deadly weapon). The jury also found Booker guilty of several other crimes, including armed robbery.

hiring Booker were made by his customer,[3] who was the only one who used the expression "break his legs." Defendant testified that the expression was neither meant nor understood to be taken literally. He denied that he ever authorized Booker to inflict physical harm or threaten to inflict specific physical harm.

Defendant was indicted for second-degree conspiracy to commit aggravated assault and third-degree conspiracy to commit criminal coercion. He essentially conceded at trial that he had hired Booker to commit a criminal coercion, but insisted that he had not hired him to commit an assault. The jury resolved the factual issues by acquitting defendant of second-degree conspiracy to commit aggravated assault and finding him guilty of third-degree conspiracy to commit criminal coercion. The judge found at the sentencing hearing that although this was the first time defendant had ever been charged with or convicted of an offense, the presumption of nonimprisonment had been overcome. *N.J.S.A.* 2C:44–1e. He imposed an extended prison term of seven years.[4]

We must examine the elements of the crime of criminal coercion because the trial judge erroneously instructed the jury respecting the difference between fourth-degree and third-degree criminal coercion. The matter comes to us as alleged plain error. Had defendant been convicted of only a fourth-degree crime, not only would he have been subject to a lower range of ordinary terms of imprisonment, but he also would not have qualified for an extended term of imprisonment. *N.J.S.A.* 2C:44–3. "Erroneous instructions on matters or issues material

---

[3] Booker and defendant both identified the customer. However, it appears from a sidebar remark that his whereabouts were not known at the time of trial.

[4] *N.J.S.A.* 2C:44–3c authorizes an extended prison term where a convicted defendant "procured the commission of the offense by payment or promise of payment of anything of pecuniary value."

to the jurors' deliberations are presumed to be reversible error." *State v. Grunow*, 102 *N.J.* 133, 148, 506 *A*.2d 708 (1986).

Unless raised to a crime of the third degree, criminal coercion is a fourth-degree crime. The offense renders criminal certain threats to coerce conduct that are not otherwise rendered criminal by more particular provisions in the Code. In some instances such other crimes are defined by the purpose of the threat, *e.g.* third-degree threat to commit unlawful harm with purpose to influence a person's exercise of authority as a public servant (*N.J.S.A.* 2C:27–3), and third-degree threat to commit a crime of violence with purpose to terrorize another (*N.J.S.A.* 2C:12–3a). In other instances the threat is an element of a more inclusive substantive crime, *e.g.* first-degree aggravated sexual assault (*N.J.S.A.* 2C:14–2a(4)), where sexual penetration is accomplished by threatening to use a weapon, and theft by extortion [5] (*N.J.S.A.* 2C:20–5a), where property is obtained by threatening to inflict bodily injury.

Fourth-degree criminal coercion is a threat made "with purpose unlawfully to restrict another's freedom of action to engage or refrain from engaging in conduct...." *N.J.S.A.* 2C:13–5a. The Legislature has recognized, however, that not every threat made to coerce another's conduct is criminal or even wrong. Daily human affairs include a multitude of benign threats, express or implied, designed to coerce people to behave or refrain from behaving in certain ways—sometimes for their own benefit, sometimes for mutual benefit, sometimes for the benefit of others. Hence, the statute requires that the purpose of the threat be unlawful, not benign. It lists seven kinds of unlawful threats, and provides for affirmative defenses that render even these threats lawful, except the threat to inflict bodily injury or to commit any other offense.[6]

---

[5] Depending on the amount involved, the offense may be as minor as a disorderly persons offense or as serious as a second-degree crime. *N.J.S.A.* 2C:20–2.

[6] *N.J.S.A.* 2C:13–5 provides in full:

The unlawful threat ascribed to defendant by the State was a threat to "[i]nflict bodily injury on anyone...." *N.J.S.A.* 2C:13–5a(1). The State had to prove that defendant and Booker agreed (the conspiracy) that Booker would threaten Camamis with bodily injury unless he refrained from conduct designed to force defendant off property that defendant claimed the right to occupy under a lease. If the State sustained its burden of proof, defendant would be guilty of fourth-degree criminal coercion.

To raise the crime to the third degree, the State had to prove further either that "the threat is to commit a crime more

---

a. **Offense defined.** A person is guilty of criminal coercion if, with purpose unlawfully to restrict another's freedom of action to engage or refrain from engaging in conduct, he threatens to:

(1) Inflict bodily injury on anyone or commit any other offense;

(2) Accuse anyone of an offense;

(3) Expose any secret which would tend to subject any person to hatred, contempt or ridicule, or to impair his credit or business repute;

(4) Take or withhold action as an official, or cause an official to take or withhold action;

(5) Bring about or continue a strike, boycott or other collective action, except that such a threat shall not be deemed coercive when the restriction compelled is demanded in the course of negotiation for the benefit of the group in whose interest the actor acts;

(6) Testify or provide information or withhold testimony or information with respect to another's legal claim or defense; or

(7) Perform any other act which would not in itself substantially benefit the actor but which is calculated to substantially harm another person with respect to his health, safety, business, calling, career, financial condition, reputation or personal relationships.

It is an affirmative defense to prosecution based on paragraphs (2), (3), (4), (6) and (7) that the actor believed the accusation or secret to be true or the proposed official action justified and that his purpose was limited to compelling the other to behave in a way reasonably related to the circumstances which were the subject of the accusation, exposure or proposed official action, as by desisting from further misbehavior, making good a wrong done, or refraining from taking any action or responsibility for which the actor believes the other disqualified.

b. **Grading.** Criminal coercion is a crime of the fourth degree unless the threat is to commit a crime more serious than one of the fourth degree or the

serious than one of the fourth degree or the actor's purpose is criminal...." *N.J.S.A.* 2C:13–5b.

As to the seriousness of the offense threatened, the State contends that the threat was to break Camamis's legs, allegedly a second-degree aggravated assault. *N.J.S.A.* 2C:12–1b(1). The relevant statutory definition of that kind of aggravated assault is causing "serious bodily injury." "Serious bodily injury" means "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *N.J.S.A.* 2C:11–1b. A threat to inflict only "bodily injury," defined by *N.J.S.A.* 2C:11–1a as "physical pain, illness or any impairment of physical conditions," would be a simple assault, a disorderly persons offense and not a crime. *N.J.S.A.* 2C:12–1a. Inexplicably, without objection from the State the trial judge did not instruct the jury to determine the seriousness of the threat that defendant engaged Booker to make. The State thereby lost the opportunity to have the jury raise the criminal coercion to a crime of the third degree.

The judge instructed the jury to consider only the alternate means of raising the crime to the third degree: whether defendant's purpose was criminal. However, he did no more than tell the jury that the State had to prove that defendant's "purpose" in making the threat was "criminal." In answer to the jurors' request for a fuller explanation, the judge simply defined "criminal" as it is defined in Black's Law Dictionary.

The "criminal purpose" alternative requires that the fact finder consider whether the actor made the threat in order to commit a specific crime distinct from the criminal coercion. A proper instruction must identify that crime and define its elements. For instance, if an actor threatens to inflict only bodily injury, a disorderly persons offense, unless the victim

---

actor's purpose is criminal, in which cases the offense is a crime of the third degree.

turns over property having a value of at least $200,[7] although the threat itself would not be to commit a crime more serious than one of the fourth degree, the actor's purpose in making the threat would be to commit the crime of theft. In such a case, the criminal coercion would be raised to a crime of the third degree.[8]

Here, defendant's purpose in entering into the conspiracy was to coerce Camamis to refrain from disturbing defendant's alleged right to use the property during the term of the lease. That is not a criminal purpose.

 In view of our determination that the judgment of conviction for third-degree criminal coercion based on defendant's alleged "criminal purpose" does not find support in the evidence, we need not detail the deficiencies in the charge related to the third-degree crime. Most of those deficiencies understandably resulted from the absence of appellate judicial guidance in analyzing this complex statute. We have no doubt, however, that it will continue to be difficult for a judge to fashion a proper jury instruction respecting the crime of third-degree criminal coercion. In doing so, the judge will have to exercise great care to make the distinctions and explain the elements of other constituent offenses as we have indicated. This cannot be done, as was done here, by simply reading to the jury the content of statutes and reciting general legal definitions and principles without relating them to the factual setting

---

[7] If the amount involved in a theft is less than $200, the offense is merely a disorderly persons offense. *N.J.S.A.* 2C:20–2b(3).

[8] As previously noted, if the seriousness of the actor's threat is used to raise criminal coercion to a crime of the third degree, the threat must be to commit a crime more serious than a fourth-degree crime. However, if the actor's criminal purpose is used to raise criminal coercion to a crime of the third degree, the purpose may be to commit any crime—including a fourth-degree crime. Thus criminal coercion may be raised to a third-degree crime even if the actor's ultimate criminal purpose is to commit only a fourth-degree crime.

of the case. *See State v. Hobbs*, 90 *N.J.Super.* 146, 149, 216 *A.*2d 595 (App.Div.1966).[9]

Defendant raises the following additional points in his brief:

1. THE TRIAL COURT'S FAILURE TO DECLARE A MISTRIAL, UPON DEFENDANT'S MOTION, FOLLOWING TRIAL CO-DEFENDANT'S TESTIMONIAL ACCUSATION OF DEFENDANT'S COUNSEL OF WITNESS TAMPERING AND SUBORNATION OF PERJURY PREJUDICED THE SUBSTANTIAL RIGHTS OF DEFENDANT TO EFFECTIVE ASSISTANCE OF COUNSEL AND A FAIR TRIAL.

2. THE PROVISIONS OF *N.J.S.A.* 2C:44–3(c) ARE INAPPLICABLE TO DEFENDANT AND, THEREFORE, HE WAS ILLEGALLY SENTENCED TO AN EXTENDED TERM OF IMPRISONMENT.

3. THE TRIAL COURT INAPPROPRIATELY FOUND "GOOD CAUSE" IN PERMITTING THE STATE TO APPLY FOR IMPOSITION OF AN EXTENDED CUSTODIAL TERM UPON DEFENDANT PURSUANT TO *N.J.S.A.* 2C:44–3(c) SUBSTANTIALLY OUTSIDE THE RULE 3:21–4(e) MANDATED TIME LIMIT FOR THE FILING OF SUCH APPLICATIONS. THE TRIAL COURT'S ABUSE OF DISCRETION PREJUDICED THE SUBSTANTIAL RIGHTS OF THE DEFENDANT TO DUE PROCESS AND EQUAL PROTECTION OF THE LAW, AND, THEREBY, BROUGHT ABOUT AN UNJUST RESULT.

---

[9] Some guidance in charging the jury respecting whether a criminal coercion is a fourth-degree or a third-degree crime may be found in the portion of the model jury charge for kidnapping, *N.J.S.A.* 2C:13–1, that explains the difference between second-degree kidnapping, where the victim is released unharmed and in a safe place prior to apprehension, and first-degree kidnapping where the victim is not:

> In this case the State alleges that the defendant did not release the victim unharmed and in a safe place prior to (his/her) apprehension. The burden of proof is on the State to prove beyond a reasonable doubt that the victim was either harmed or not released in a safe place prior to defendant's apprehension. Unless you find that the State has carried this burden, you must find the defendant not guilty of kidnapping in the first degree.

Similarly, for a defendant to be found guilty of third-degree criminal coercion the State must prove that the defendant threatened to commit one or more specific crimes (more serious than crimes of the fourth degree) or that the defendant's purpose in making the threat was to commit one or more specific crimes (of any degree). The charge must identify the specific crime or crimes used to raise the criminal coercion to a third-degree crime and explain the elements of each.

4. THE CUSTODIAL TERM IMPOSED UPON DEFENDANT IN THIS CASE, UNDER THE CIRCUMSTANCES, IS MANIFESTLY EXCESSIVE AND UNDULY PUNITIVE.

We are satisfied from a careful review of this record that Point 1 is clearly without merit and requires no further discussion. *R.* 2:11–3(e)(2). The other points have been rendered moot by our opinion.

The conviction for third-degree criminal coercion is reversed. The matter is remanded so that defendant may be sentenced for fourth-degree criminal coercion.