233 N.J. Super. 368 (1989)
559 A.2d 8
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DERRICK TYRONE TEAT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted April 12, 1989.
Decided June 1, 1989.
*369 Before Judges BRODY, ASHBEY and SKILLMAN.
Alfred A. Slocum, Public Defender, attorney for appellant (Theresa Yvette Kyles, Assistant Deputy Public Defender, of counsel and on the letter brief).
Peter N. Perretti, Jr., Attorney General, attorney for respondent (Cherrie Madden Black, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by BRODY, J.A.D.
Defendant was indicted for the purposeful or knowing murder of his 18-year-old girlfriend with whom he had been living. *370 He beat the woman to death. The jury found him guilty of second-degree passion/provocation manslaughter. N.J.S.A. 2C:11-4b(2). The judge imposed the most severe sentence available for the crime: a 10-year prison term, 5 years to be served before parole eligibility. The sole issue on appeal is whether the trial judge complied with statutory guidelines when he imposed the sentence. We transferred the appeal to our regular calendar from the Excessive Sentence Oral Argument Program in order to have the benefit of the parties' briefs in considering the special problems raised respecting the application of the guidelines to a sentence for passion/provocation manslaughter.
The judge found four aggravating factors: that the crime was "serious," that defendant and others must be deterred from committing such a crime, that defendant committed the crime "in a cruel and vicious manner" and that the victim was physically unable to offer effective resistance when defendant struck the fatal blows. The judge found as the sole mitigating factor defendant's previous crime-free record.[1]
Plaintiff argues that the judge should not have considered any of the four aggravating factors because the first is not an aggravating factor and the others are inapplicable when sentencing for passion/provocation manslaughter because they assume that the crime was a rational act whereas by definition the crime is not. The State concedes in its brief that the judge erred in considering the "seriousness" of the offense as an aggravating factor because the Legislature has already gauged the seriousness of passion/provocation manslaughter by making it a second-degree crime. See State v. Gardner, 113 N.J. 510, 518-519 (1989).
Before discussing whether the judge could properly consider the other aggravating factors, we need to review the evidence *371 on which the conviction rests. Defendant awoke in his apartment early one morning to find that the victim had not come home that night. He testified that he thereupon dressed and left the building "to get some air." While in front of the building he heard the victim's voice coming from the hallway of a neighboring building. When he entered that building to investigate, he saw the victim standing in the hallway in the close embrace of a man who was kissing and fondling her. The man fled and defendant began to inflict a beating from which the victim died two days later.
The beating lasted for a half hour. After beating her in the hallway, defendant shoved her out of the building onto the street where he continued to beat her. Passersby told defendant to stop, but as two eye-witnesses testified, he told them to mind their own business because "this is my bitch." Defendant then dragged the victim inside the hallway of the building where they lived. At trial a neighbor described her observations of the moment the victim appeared to lose consciousness after defendant had dragged her back into their building:
Yes, when he dragged her in the hallway he left her feet out. He didn't put her all the way in, so he went in the hallway. I couldn't see him hitting her or anything but I could, you know, hear the punches, so when he knocked her out, her feet stopped and I told my niece she might be dead, so he came outside and put his feet on a stump and pulled up his sock and went back in the hallway and punched her and said, "Wake up, bitch, you ain't dead."
Defendant then carried the unconscious victim into their apartment where, over two hours later, he finally called for an ambulance. When the judge asked defendant at the sentencing hearing why he waited so long before calling for medical help, he replied:
MR. TEAT: I was trying to take care of her at the house.
THE COURT: She was unconscious.
MR. TEAT: I was trying to wake her up. I had first aid before. I used to be a life guard.
A homicide which would otherwise be murder is reduced to passion/provocation manslaughter when it "is committed in the heat of passion resulting from reasonable provocation." N.J.S. *372 A. 2C:11-4b(2). The statutory definition of the crime codifies the common-law definition of voluntary manslaughter. State v. Grunow, 102 N.J. 133, 141 (1986). At common law "to reduce [an intentional killing] from murder to manslaughter it must appear that the killing occurred during the heat of a passion resulting from a reasonable provocation, a passion which effectively deprived the killer of the mastery of his understanding, a passion which was acted upon before a time sufficient to permit reason to resume its sway had passed." State v. King, 37 N.J. 285, 300 (1962). The homicide is reduced from murder to manslaughter as "a fair concession to the frailties of man." State v. Williams, 29 N.J. 27, 43 (1959).
Ordinarily a judge may properly consider as a mitigating sentencing factor that the "defendant acted under a strong provocation." N.J.S.A. 2C:44-1b(3). The provocation referred to "relates to the conduct of the victim toward the actor." State v. Jasuilewicz, 205 N.J. Super. 558, 576 (App.Div. 1985), certif. den., 103 N.J. 467 (1986). By establishing the crime of passion/provocation manslaughter, the Legislature in effect transferred from the judge to the jury the authority to apply that mitigating factor in certain murder cases. When a jury finds a defendant guilty of passion/provocation manslaughter, it thereby reduces the sentencing range of the crime from the severe penalties of murder to the less severe penalties of a second-degree crime.
Thus a judge imposing a sentence for passion/provocation manslaughter may not consider "strong provocation" as a mitigating factor tending to reduce a passion/provocation manslaughter sentence to the lower end of the sentencing range for that crime. The defendant already received the benefit of that mitigating factor when the jury used it to reduce the murder he otherwise committed to second-degree manslaughter. Considering "strong provocation" to reduce murder to manslaughter and considering it again to reduce the manslaughter sentence would improperly double count a mitigating factor. Double *373 counting mitigating factors distorts the sentencing guidelines as much as double counting aggravating factors. See State v. Yarbough, 100 N.J. 627, 633 (1985), cert. den., 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986); State v. Link, 197 N.J. Super. 615, 620 (App.Div. 1984), certif. den., 101 N.J. 234 (1985).
That is not to say, however, that a judge sentencing a defendant for passion/provocation manslaughter must treat the jury's guilty verdict as a finding of fact that the defendant was reasonably provoked to passion and committed the homicide before reason had sufficient time to regain its sway, which would preclude the application of inconsistent aggravating factors. A jury must return a verdict that a defendant, otherwise guilty of murder, is guilty only of passion/provocation manslaughter if it has "a reasonable doubt that the accused did not kill ... in the heat of passion caused by inadequate provocation." State v. Grunow, 102 N.J. 133, 145 (1986) (quoting from State v. Powell, 84 N.J. 305, 315 (1980)). A jury's reasonable doubt that the State disproved the mitigating elements of passion/provocation manslaughter is not the equivalent, for sentencing purposes, of an affirmative finding of fact that the defendant was reasonably provoked to passion and killed before reason had sufficient time to regain its sway.
It is therefore proper  and consistent with the verdict  for a judge sentencing a defendant for passion/provocation manslaughter to find as an aggravating factor in an appropriate case, that the provocation to kill was slight or that reason had sufficient time to regain its sway before the defendant killed. The nature and circumstances of the offense and the role of the actor therein is an aggravating factor. N.J.S.A. 2C:44-1a(1). For the same reason it is proper for a judge to find as aggravating factors in an appropriate case, the victim's particular vulnerability, N.J.S.A. 2C:44-1a(2), and the need to deter the defendant and others from violating the law, N.J.S.A. 2C:44-1a(9), even though the jury found the defendant guilty of a *374 crime that included as an element his being in the grip of a passion when he killed.
In other words, applying aggravating sentencing factors that are related to the commission of the crime, a judge may find that a particular passion/provocation manslaughter is closer to murder than others would be and should therefore be more severely punished. Obviously, the judge found that to be the case here.
Without minimizing the provocation of seeing one's lover in the arms of another, albeit not in flagrante delicto, the trial judge could properly have found that the prolonged assault here came close to murder. He could properly have found that before this half-hour beating was over defendant must have or should have regained control of his reason. Defendant was not deaf to the pleas of the bystanders; he acknowledged their admonitions and told them to mind their own business. He paused from his fatal work to catch his breath and pull up his socks before he resumed the beating. It must also have been apparent to defendant that the victim, because of her slight build compared to his, was no match for him, certainly not after he had rendered her unconscious and continued beating her. He delayed calling for medical help for over two hours. Defendant's level of responsiveness to the admonitions of others, and to what he was doing and had done, evidence an ability to be deterred by the prospect of severe punishment for his acts. The judge could properly have found that this conduct constituted aggravating sentencing factors.
Had the trial judge not specifically enumerated the "seriousness" of the crime as a distinct aggravating factor, we would affirm the sentence as falling within the Code's sentencing guidelines, factually supported and rational. State v. Roth, 95 N.J. 334, 364-365 (1984). However, we cannot tell from the record whether the judge attributed any significant weight to this improper factor or whether, though referring to "seriousness" of the crime as one of four aggravating factors, he was merely *375 referring to the nature and circumstances of the crime and defendant's role therein in another way. We note that the judge did not respond to the argument of defendant's attorney, made after the judge had made his sentencing findings, that "the seriousness of the crime is also part of the verdict so that shouldn't be counted against him if you are not going to count strong provocation."
Given our uncertainty regarding the trial judge's intent, we remand for resentencing. See State v. Jarbath, 114 N.J. 394, 411 (1989) ("... [T]he exercise of appellate original jurisdiction over sentencing should not occur regularly or routinely; in the face of deficient sentences, a remand to the trial court for resentencing is strongly to be preferred.").
From a careful review of this record we are satisfied that defendant's contentions that the judge erred by not finding additional mitigating factors are clearly without merit. R. 2:11-3(e)(2).
The sentence is vacated. The cause is remanded to the trial court for resentencing consistent with this opinion.
NOTES
[1] At the time of sentencing defendant was awaiting trial of a charge of unlawful possession of cocaine.