**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1863-16T4

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

AHMAD TAYLOR,
a/k/a AHAMD TAYLOR,

      Defendant-Appellant.

_____

Submitted September 18, 2018 – Decided October 9, 2018

Before Judges Yannotti and Gilson.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Indictment No. 11-05-0958.

Joseph E. Krakora, Public Defender, attorney for appellant (Michele A. Adubato, Designated Counsel, on the brief).

Theodore Stephens II, Acting Essex County Prosecutor, attorney for respondent (LeeAnn Cunningham, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Ahmad Taylor appeals from an order entered by the Law Division on November 17, 2016, which denied his petition for post-conviction relief (PCR). We affirm.

I.

An Essex County grand jury charged defendant with first-degree murder, N.J.S.A. 2C:11-3(a)(1) or (2); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a). Defendant was tried before a jury.

At the trial, the State presented evidence that on January 16, 2011, Tyhirah Borden and others went to an apartment in Newark. The victim, Amir McLean, lived there with Samantha Jarrells and her three children. Jarrells is defendant's aunt. McLean was not present when Borden arrived, but he appeared shortly thereafter. The group was drinking wine, listening to music, and playing cards. After socializing with the group, McLean went into his bedroom.

At around 6:00 p.m., Jarrells called defendant and told him that earlier that day, defendant's sister got into an altercation with some other persons. Jarrells told defendant a man got involved and smacked his sister. She wanted

defendant to come to the apartment and talk to the man who struck his sister. Shortly thereafter, defendant and his friends arrived at Jarrells's apartment.

Jarrells called one of the persons who had been involved in the altercation, and during the call, defendant grabbed the phone. Jarrells said that defendant showed her a gun he had tucked into the waistband of his pants. He said he was going to use the gun when dealing with one of the persons involved in the incident. Jarrells told defendant to put the gun away because there were children in the apartment.

McLean did not want defendant's friends in the apartment, and Jarrells told them to leave. They left and defendant remained. McLean went to his bedroom, and defendant was sitting on a couch in the living room. McLean later exited his bedroom, asked Jarrells for wine, and got into an argument with her when she did not answer him. McLean became angry and threw a stack of CDs out of the window. He took some wine from the refrigerator and went back into his bedroom.

Defendant had been in the bathroom, and when he came out, he asked Jarrells "[W]here the CDs at?" She told him McLean had thrown them out the window. Defendant became upset. Borden offered to go outside to retrieve the

CDs, but defendant ignored her. Defendant went to McLean's bedroom and Borden followed.

Borden testified that defendant entered the bedroom and told McLean to "pick up these mother fucking CDs." McLean had been lying on the bed. He stood on the bed and said, "[W]ho the fuck is you talking to?" Borden said McLean put up his hands in fists and appeared as if he was ready to fight. A few seconds later, defendant drew a gun from a blue laundry basket in Jarrells's closet. McLean pushed Borden, knocking her to the floor. Borden said she saw defendant shoot McLean.

Defendant testified that he confronted McLean and the two began yelling at each other. He said McLean moved towards him and drew a gun from the closet. He said he could not leave the room, but he wrestled the gun from McLean. He claimed he was afraid to turn his back on McLean. He testified he had "no choice" but to shoot McLean twice. He left the apartment and threw the gun under a nearby dumpster. Defendant turned himself into police the next day.

The jury found defendant not guilty of murder, but guilty of passion/provocation manslaughter and unlawful possession of a weapon. The jury found defendant not guilty of possession of a weapon for an unlawful

purpose and endangering the welfare of a child.  Thereafter, the trial judge denied defendant's motion for a new trial.

The judge sentenced defendant to ten years of imprisonment for passion/provocation manslaughter, with an eighty-five percent period of parole ineligibility, pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2.  The judge also sentenced defendant to a concurrent ten-year sentence for unlawful possession of a weapon, with a five-year period of parole ineligibility, pursuant to N.J.S.A. 2C:43-6(c).  The court also assessed appropriate fines and penalties. The court filed a judgment of conviction dated May 10, 2012.

Defendant appealed to this court and raised the following arguments:

> POINT I
> THE STATE'S ARGUMENT IN SUMMATION THAT DEFENDANT SHOULD BE CONVICTED BECAUSE "[I]N MURDER, YOU . . . DON'T SEE THE VICTIM" CONSTITUTED PROSECUTORIAL MISCONDUCT NECESSITATING REVERSAL.
>
> POINT II
> THE TRIAL COURT ERRED BY FAILING TO INSTRUCT THE JURY THAT THE PRIOR INCONSISTENT STATEMENTS CONTAINED IN THE POLICE REPORTS OF KEY STATE WITNESSES WERE ADMISSIBLE AS SUBSTANTIVE EVIDENCE.  (Not Raised Below).
>
> POINT III
> DEFENDANT'S SENTENCE IS MANIFESTLY EXCESSIVE AND UNDULY PUNITIVE.

On February 25, 2014, we affirmed defendant's conviction and sentence in an unpublished opinion. State v. Taylor, No. A-5263-11 (App. Div. Feb. 25, 2014). The Supreme Court denied defendant's petition for certification. State v. Taylor, 220 N.J. 39 (2014).

On March 17, 2016, defendant filed a pro se petition for PCR. The court appointed counsel for defendant and counsel filed an amended petition. On November 17, 2016, the PCR court entered an order denying the petition for the reasons stated in an accompanying written opinion. This appeal followed.

On appeal, defendant argues:

> POINT I
> THE PCR COURT'S DENIAL OF DEFENDANT'S REQUEST FOR AN EVIDENTIARY HEARING WAS ERRONEOUS.
>
> POINT II
> THE PCR COURT ERRED IN DENYING DEFENDANT AN EVIDENTIARY HEARING TO ESTABLISH THAT HE WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL.
>
> [A.] FAILURE OF TRIAL AND APPELLATE COUNSEL TO MOVE TO DIMSISS THE INDICTMENT BASED ON IMPROPER EVIDENCE PRESENTED BEFORE THE GRAND JURY.
>
> [B.] FAILURE OF APPELLATE COUNSEL TO RAISE THE ISSUE OF THE IMPROVIDENT SUBSTITUTION OF [A] DELIBERATING JUROR.

[C.] FAILURE OF TRIAL COUNSEL TO PRESENT ALL RELEVANT MITIGATING FACTORS AT SENTENCING.

II.

The PCR court should conduct an evidentiary hearing on PCR petition if the defendant presents a prima facie case in support of PCR, the defendant has raised a "material issue[] of disputed fact that cannot be resolved by reference to the existing record, and [the court] determin[es] that an evidentiary hearing is necessary to resolve the claims for relief." R. 3:22-10(b). Furthermore, to establish a prima facie case for relief, a defendant must establish a reasonable likelihood that he or she will ultimately succeed on the merits, "viewing the facts alleged in the light most favorable to the defendant." Ibid.; see also State v. Porter, 216 N.J. 343, 354 (2013) (citing R. 3:22-10(b)).

Here, defendant argues he was denied the effective assistance of trial and appellate counsel. To establish a prima facie case of ineffective assistance of counsel defendant must satisfy the two-part test established in Strickland v. Washington, 466 U.S. 668, 687 (1984), and later adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987).

Under the test, "the defendant must show that counsel's performance was deficient." Strickland, 466 U.S. at 687. Defendant also must show "the deficient

A-1863-16T4

performance prejudiced the defense."  Ibid.  To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

A.  Grand Jury Proceeding

Defendant argues that the assistant prosecutor improperly presented evidence regarding his prior criminal history to the grand jury.  Defendant contends his trial counsel erred by failing to file a motion to dismiss the indictment on this basis, and appellate counsel was deficient in failing to raise this issue on appeal.  The PCR court found that a motion to dismiss the indictment would have been meritless and trial and appellate counsel were not ineffective in failing to raise this issue.

An indictment is "presumed valid and should be dismissed only upon the clearest and plainest ground and only if palpably defective."  State v. Schenkolewski, 301 N.J. Super. 115, 137 (App. Div. 1997) (citations omitted). The court will not dismiss an indictment "unless the prosecutor's misconduct is 'extreme and clearly infringes upon the [grand] jury decision-making function[.]'"  State v. Hogan, 336 N.J. Super. 319, 339 (App. Div. 2001) (first

alteration in original) (quoting State v. Schamberg, 146 N.J. Super. 559, 564 (App. Div. 1977)).

Here, the record shows that during the grand jury proceedings, a juror asked witness Detective Paul Sarabando whether he had run a check to determine if defendant had a license to carry or possess a gun. The detective replied he had not yet taken that action, but he stated that defendant had "a prior history, so [he was] not able to carry" a gun.

Later, another member of the grand jury asked whether any charges were going to be filed against Jarrells because she had called defendant to her apartment, knowing he had prior charges and could act violently. The assistant prosecutor responded by issuing the following instruction:

> All right. . . . A couple of questions that I'm going to try to answer. Number [o]ne, the [d]etective indicated that the defendant was ineligible for a weapons permit because of prior offenses. That is not something you should consider in determining whether or not to return an indictment here.
>
> . . . There is no indication that we have that [Jarrells] knew [defendant] had a gun. There is nothing other than to indicate his relative age. He brought two friends with him. And you may draw whatever inference you wish from that. But again, there is no indication that [Jarrells] solicited him to do anything, especially since he arrived two hours after the fact.

A juror commented that because defendant had a prior record, he should not have been able to obtain a permit to carry a gun. The assistant prosecutor stated there is a presumption that an individual does not have a permit to carry a gun unless that individual produces a permit. A grand juror stated that if a person "has priors, he [cannot] have a permit anyway."

Therefore, the record shows that the assistant prosecutor did not elicit testimony regarding defendant's prior record. The detective provided the information in response to a question by a grand juror. Moreover, and most important, the assistant prosecutor specifically instructed the grand jury that it should not consider defendant's prior offenses in determining whether it should return an indictment.

Thus, trial counsel did not have a factual basis for seeking dismissal of the indictment based upon prosecutorial misconduct. Furthermore, as we stated in Schamberg, an indictment will not be dismissed based upon "a chance remark or improper question before a grand jury [that] does not affect the ultimate determination of defendant's guilt[.]" Schamberg, 146 N.J. Super. at 563 (citations omitted). We conclude the PCR court correctly found that trial counsel was not ineffective for failing to seek dismissal of the indictment, and appellate counsel did not err by failing to raise this issue on appeal.

## B. Substitution of Juror

Defendant argues he was denied the effective assistance of appellate counsel because counsel did not argue on appeal that his conviction should be reversed due to the improper substitution of a deliberating juror. The PCR court determined that appellate counsel was not ineffective for failing to raise the issue on appeal.

The record shows that after the jury had deliberated for a full day plus one- half hour on another day, a juror called the judge's chambers and indicated she was ill and going to check herself into a hospital. After hearing argument of counsel on this issue, the judge excused the juror and impaneled an alternate juror. The judge found that the jury had not deliberated a significant amount of time, and it could heed his instruction to begin its deliberations anew.

The PCR court found that the trial judge properly substituted the juror in light of her illness. The court rejected defendant's contention that the judge should have contacted the deliberating juror to determine how long she would be in the hospital. The court noted that Rule 1:8-2(d)(1) permits the court to remove and replace a juror for a physical illness, and nothing in the rule requires the trial judge to inquire into the juror's request to be excused based on a medical reason.

The PCR court further found that because the jury had only been deliberating a brief time, there was no indication that it had formed any conclusions about the case. In addition, the court noted that there was no evidence that the juror was a holdout juror, had manifested bias, or confronted any hostile or intractable jurors.

There also was no evidence any disputes had arisen in the jury room. The PCR court determined that the juror's reported illness was sufficiently debilitating to preclude her from further service on the jury, and no reason for the trial judge to inquire into the juror's message.

The PCR court correctly determined that appellate counsel was not deficient in failing to argue that the trial judge erred by excusing the juror and empaneling an alternate. As the court noted, such an argument would have been meritless, and the appeal would not have been decided differently if counsel had raised the issue.

C. Sentencing

Defendant argues that he was denied the effective assistance of counsel at sentencing. He notes that he was sentenced for the manslaughter to a term of ten years of incarceration, with an eighty-five percent period of parole ineligibility. He asserts that a shorter sentence could have been imposed if

counsel had argued mitigating factors two, eleven, and twelve. N.J.S.A. 2C:44-1(b)(2), (11), (12).

Here, the trial judge found aggravating factors three, N.J.S.A. 2C:44-1(a)(3) (risk that defendant will commit another offense); six, N.J.S.A. 2C:44-1(a)(6) (defendant's prior criminal record and seriousness of crimes of which he has been convicted); and nine, N.J.S.A. 2C:44-1(a)(9) (need to deter defendant and others from violating the law). The judge found no mitigating factors applied.

The record shows that at sentencing, defense counsel argued for findings of mitigating factors three, N.J.S.A. 2C:44-1(b)(3) (defendant acted under strong provocation); four, N.J.S.A. 2C:44-1(b)(4) (substantial grounds to excuse or justify defendant's conduct); five, N.J.S.A. 44-1(b)(5) (victim induced or facilitated the commission of the offense); eight, N.J.S.A. 44-1(b)(8) (defendant's conduct was the result of circumstances unlikely to recur); and nine, N.J.S.A. 44-1(b)(9) (defendant's character and attitude indicate he is unlikely to commit another offense).

Defendant argues that counsel also should have argued mitigating factor two, N.J.S.A. 2C:44-1(b)(2) (defendant did not contemplate that his conduct would cause or threaten serious harm). He contends his actions were

spontaneous and taken in response to the victim's actions. He contends that because the jury found him not guilty of murder, but guilty of passion/provocation manslaughter, his attorney could have credibly argued mitigating factor two. We disagree.

In State v. Teat, 233 N.J. Super. 368, 372 (App. Div. 1989), we noted that when a defendant is found guilty of passion/provocation manslaughter, the judge may not find mitigating factor three, N.J.S.A. 2C:44-1(b)(3) (defendant acted under a strong provocation). We noted that defendant had already received the benefit of that factor when the jury reduced the murder charge to second-degree manslaughter. Teat, 233 N.J. Super. at 372. The same reasoning applies to mitigating factor two.

Defendant further argues counsel should have raised mitigating factor eleven, N.J.S.A. 2C:44-1(b)(11) (defendant's imprisonment will entail excessive hardship to defendant or his dependents). Again, we disagree.

Here, the PCR court noted that counsel was not ineffective by failing to argue this factor. The court observed there is nothing in the record which suggests defendant's incarceration would result in excessive hardship. The court stated that defendant did not "present[] [any] evidence that at the time of sentencing he suffered from any condition which would make imprisonment an

excessive hardship on him, or that his counsel knew of any extraordinary fact that made mitigating factor eleven applicable." The record supports the court's findings.

Defendant further argues his counsel should have argued mitigating factor twelve, N.J.S.A. 2C:44-1(b)(12) (defendant's willingness to cooperate with law enforcement authorities). Defendant notes that he surrendered to the police. However, defendant's surrender is not a sufficient basis for finding mitigating factor twelve. See State v. Read, 397 N.J. Super. 598, 613 (App. Div. 2008) (questioning whether a confession qualifies as "cooperation," at least in the absence of any indication that defendant identified other perpetrators or assisted law enforcement in solving other crimes).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION