**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1453-21

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JASON MOLINA,

    Defendant-Appellant.

_____

Argued January 22, 2024 – Decided January 30, 2024

Before Judges Sabatino, Marczyk, and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 16-01-0038.

Joshua David Altman argued the cause for appellant (Benedict Altman & Nettl, LLC, attorneys; Steven D. Altman, Joshua David Altman, Philip Nettl, on the brief).

David Michael Liston, Assistant Prosecutor, argued the cause for respondent (Yolanda Ciccone, Middlesex County Prosecutor, attorney; David Michael Liston, of counsel and on the brief).

PER CURIAM

This appeal solely concerns the sentencing of defendant Jason Molina who, at the age of sixteen, stabbed to death a twenty-three-year-old woman in a New Brunswick apartment in May 2015.[1] Following his arrest, defendant was waived as a minor to the Criminal Part and charged with first-degree murder and other offenses.

After being held in a juvenile correctional facility for over six years,[2] defendant entered into a negotiated plea agreement in June 2021. Pursuant to that agreement, defendant pled guilty to a reduced charge of first-degree aggravated manslaughter. The agreement specified the State would recommend a custodial sentence not to exceed twelve years, with the defense being free to advocate to the court for a lower sentence.

In December 2021, the trial court presided over an extensive sentencing hearing. Defendant had been examined multiple times by psychologists for both the defense and the State. These included two series of defense examinations by Dr. Gianni Pirrelli, who issued his first report in January 2017, and a second

---

[1] We need not recite in this opinion remanding the case the gruesome facts of the homicide, which are familiar to the parties and the affected family members.

[2] Counsel explained to us during oral argument that this unusually lengthy period was consumed with numerous motions and hearings.

report four years later in September 2021. The defense also presented a risk assessment report by Dr. Sean Hiscox in November 2021. The State presented a competing report by Dr. Louis Schlesinger issued in February 2018.

As attested by his experts and two members of the facility's staff who submitted statements to the court, defendant substantially matured during the six-year interval between his 2015 arrest and his 2021 sentencing. According to Dr. Pirrelli's second report, he became "a completely different person than the teenage[r] who engaged in such extreme violence." The doctor opined defendant was "not at imminent or even elevated risk to engage in acts of violence toward others . . . in the foreseeable future." Dr. Pirrelli asserted that his "mental health problems and associated behavior can be managed in the community at this point," subject to conditions such as continued therapy and educational and vocational pursuits. Dr. Hiscox similarly opined that, as of November 2021, defendant posed "a low risk for engaging in future violent behavior." In that same vein, defendant presented supportive letters from a social worker and a teacher at the juvenile facility attesting to his great improvement. The social worker testified on his behalf at his sentencing.

On the other hand, the State's expert, Dr. Schlesinger, was more guarded. In his 2018 report, Dr. Schlesinger noted defendant's primary problem of

"explosive violence," and opined that he was clearly aware of the wrongfulness of his conduct when he killed the victim.

Consistent with the plea agreement, the court sentenced defendant to a twelve-year custodial term, subject to an eighty-five percent parole ineligibility period mandated by the No Early Release Act, N.J.S.A. 2C:43-7.2. In its oral opinion and accompanying judgment of conviction, the court found several aggravating factors pertained and only one mitigating factor. Specifically, the court found present aggravating factors: one, N.J.S.A. 2C:44-1(a)(1) (a crime committed in an "especially heinous, cruel, or depraved manner"); two, N.J.S.A. 2C:44-1(a)(2) (the "gravity and seriousness of the harm inflicted on the victim"); three, N.J.S.A. 2C:44-1(a)(3) (the risk that defendant will reoffend); and nine, N.J.S.A. 2C:44-1(a)(9) (the need to deter the defendant and others from violating the law). The court found those aggravating factors "substantially outweigh[ed]" mitigating factor fourteen, N.J.S.A. 2C:44-1(b)(14) (an offense by a person under the age of twenty-six). The court rejected other mitigating factors proposed by defendant.

The court acknowledged defendant's progress within the juvenile facility. Nonetheless, the court expressed concerns about whether defendant would

manage his violent tendencies in the "real world."  Among other things, the court found persuasive the expert opinions of Dr. Schlesinger.

This appeal ensued.  Fundamentally, defendant argues the sentencing court failed to give fair consideration to his six years of progress within the juvenile facility and the opinions of the two defense psychologists.  He further contends the court placed too much weight on the downgrade in the plea agreement and used an incorrect legal standard in denying his request to be treated as a second-degree offender.

In his brief on appeal, defendant presented these points:

POINT I

THE SENTENCE MUST BE VACATED AND REMANDED FOR A NEW SENTENCING HEARING, BECAUSE THE SENTENCING COURT FAILED TO FOLLOW THE APPLICABLE GUIDELINES, INAPPROPRIATELY PRECLUDED MITIGATING FACTORS, AND GAVE UNDUE WEIGHT TO AGGRAVATING FACTORS.

A. THE COURT GAVE UNDUE WEIGHT TO THE STATE'S SENTENCING RECOMMENDATION.

B. THE SENTENCING COURT UNREASONABLY PRECLUDED ITSELF FROM FINDING MITIGATING FACTORS SUPPORTED BY THE RECORD.

5

C. THE SENTENCING COURT GAVE GREATER WEIGHT TO A STALE PSYCHOLOGICAL REPORT BY THE STATE'S PSYCHOLOGIST, THAN A CURRENT REPORT BY THE EXPERTS PRESENTED BY THE DEFENSE.

D. THE SENTENCING COURT USED THE INCORRECT LEGAL STANDARD TO EVALUATE DEFENDANT'S APPLICATION FOR A SENTENCE IN THE SECOND DEGREE RANGE.

Our consideration of these arguments is guided by well settled principles. "Appellate review of a criminal sentence is limited; a reviewing court decides whether there is a 'clear showing of abuse of discretion.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting State v. Whitaker, 79 N.J. 503, 512 (1979)). We "must not 'substitute [our] judgment for that of the sentencing court.'" State v. Liepe, 239 N.J. 359, 370 (2019) (quoting State v. Fuentes, 217 N.J. 57, 70 (2014)). Instead, we will affirm a trial court's sentence unless: "(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not 'based upon competent credible evidence in the record;' or (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" Bolvito, 217 N.J. at 228 (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

6

Here, defendant has presented several facets of the sentencing court's reasoning that he contends require a remand for resentencing. He identifies a number of discrete alleged misstatements and omissions that he contends produced an unfair sentence.

In considering these arguments, we are mindful of the Supreme Court's admonition in Fuentes that a sentencing court's "clear and detailed statement of reasons is [] a crucial component of the process conducted by the sentencing court, and a prerequisite to effective appellate review." 217 N.J. at 74.

We have closely examined the sentencing court's reasoning in its oral opinion and conclude that the court's reasons, for the most part, were well supported by the record and the applicable law. Among other things, we reject defendant's contentions that the trial court afforded undue weight to the State's negotiated sentencing recommendation within the plea agreement. We further reject defendant's claim that the court did not sufficiently recognize his good behavior while in confinement.

However, other aspects of the court's reasoning were legally incorrect or incomplete. Given the cumulative effect of those errors and omissions, we are constrained to remand this matter for resentencing. We briefly discuss those areas of concern.

7

First and foremost, the trial court declared that it would be impermissible "double counting" to afford defendant the benefit of mitigating factor fourteen based on his age under twenty-six and, simultaneously, to apply to his benefit mitigating factors three, N.J.S.A. 2C:44-1(b)(3) (acting "under a strong provocation"); four, N.J.S.A. 2C:44-1(b)(4) ("substantial grounds tending to excuse or justify the defendant's conduct"); and five, N.J.S.A. 2C:44-1(b)(5) (the victim "induced or facilitated" the offense). The court declined to apply any of these other mitigating factors as a matter of law, reasoning that doing so "because of his age" would be improper "double counting."

Defendant argues that the double-counting prohibition can only apply to aggravating factors, not mitigating factors. He asserts the prohibition solely concerns aggravating factors in situations where they are already incorporated as an element of the offense. See, e.g., State v. Lawless, 214 N.J. 594, 608 (2013) (aggravating factor two, N.J.S.A. 2C:44-1(a)(2) ("gravity and seriousness of harm inflicted on victim") cannot be based on harm suffered by people physically injured by a defendant's conduct, but who are not victims of the convicted offense, because such harm is already counted in aggravating factor one).

A leading treatise on New Jersey criminal law asserts a contrary position, noting in Comment 5 to N.J.S.A. 2C:44-1 that "[a]s with aggravating factors, mitigating factors are not to be 'double counted'; that is, an element of the offense should not be considered for sentencing as a separate factor." Cannel, New Jersey Criminal Code Annotated, cmt. 5 on N.J.S.A. 2C:44-1 (2023). The Comment cites as an example State v. Teat, 233 N.J. Super. 368, 372-74 (App. Div. 1989), in which we held that where a jury found a defendant guilty of passion/provocation manslaughter instead of murder, provocation should not be considered again as a mitigating factor at that defendant's sentencing.

In the present case, however, the age of defendant is not an element of the State's case that would have had to be proven at trial. Nor would it be an element of any defense that defendant might present, such as insanity or self-defense. Nor is the age of the offender subsumed as a grading factor within the definition of the offense.

Instead of being an element of the crime or an affirmative defense, defendant's youth is a specified mitigating factor for sentencing, as the result of a recent amendment to the statute enacted by the Legislature. See State v. Lane,

251 N.J. 84, 87 (2022).[3]  Defendant's age of sixteen at the time of the offense satisfies mitigating factor fourteen directly, but it also might potentially support other mitigating factors indirectly as well.  The trial court therefore misspoke in stating it would be improper double-counting for it to take into account defendant's youth when evaluating the applicability of mitigating factors three, four, and five.

Indeed, many items on the statutory list of aggravating and mitigating factors within N.J.S.A. 2C:44-1(a) and (b) conceptually overlap with one another.  As just one example, facts and circumstances identified at sentencing could bear upon both the risk of reoffense (aggravating factor three) as well as the need for deterrence (aggravating factor nine).  The factors are not airtight categories.

Despite its misstatement about double-counting, the sentencing court went on to explain why mitigating factors three and five are not supported here.  We agree with the court's analysis in rejecting those two factors.  Unfortunately, however, the court did not express its reasons for rejecting mitigating factor

---

[3]  Although defendant's offense occurred in 2015 before the amendment was enacted in 2020, it is undisputed that mitigating factor fourteen was in effect at the time of his December 2021 sentencing.  See Lane, 251 N.J. at 87-88.

four. We decline to speculate on why the court rejected that particular factor, other than the mistaken double-counting premise.

A second matter of concern is the following underscored statement within the court's oral decision:

> And as I've already indicated, mitigating factor [fourteen] does apply, and actually would still apply if the defendant committed a crime today <u>lending further support to my finding of aggravating factor three</u>.

> [(Emphasis added).]

Case law is clear that sentencing courts are disallowed from treating an offender's youth as an aggravating factor. <u>See, e.g.</u>, <u>State v. Rivera</u>, 249 N.J. 285, 303 (2021) (in which the Court repudiated a sentencing court's use of a defendant's young age, and lack of time to commit more offenses, as support for aggravating factor three). The Court held in <u>Rivera</u> that "youth may be considered only as a mitigating factor in sentencing and cannot support an aggravating factor." <u>Ibid.</u> Consequently, the trial court's above-quoted comment about defendant's young age "lending further support" to aggravating factor three was legal error.

Third, the trial court also seems to have misspoken when it stated why it rejected defendant's request to be sentenced one degree lower to the second-degree range. The court invoked the "serious injustice" standard of N.J.S.A.

2C:44-1(d), which addresses the presumption of incarceration for first- and second-degree offenses, rather than the less stringent "interest of justice" standard of N.J.S.A. 2C:44-1(f)(2), which governs here. The error may have been inadvertent or mistranscribed. But if the court indeed applied the wrong legal standard for a downgrade, defendant may have been prejudiced.

Fourth and finally, defendant highlights that the trial court's sentencing analysis fails to discuss in depth the predictive assessments of Drs. Pirrelli and Hiscox, both of whom opined in their 2021 reports that defendant presents a "low risk" of reoffense if he were released and were provided with counseling and other forms of support. We recognize the court rightly expressed concern that releasing defendant into society could pose more behavioral risks than within the controlled environment of a juvenile correctional facility. Even so, the trial court's analysis did not address, at least explicitly, the substance of the opinion of Dr. Hiscox, and it said very little about Dr. Pirrelli's second report. Meanwhile, the court relied substantially on Dr. Schlesinger's report prepared for the State, which was issued in 2018, three years earlier than those defense reports and which contains no risk assessment.

Having duly considered these matters in combination, and mindful of the "crucial" role of a sentencing court's statement of reasons, see Fuentes, 217 N.J.

A-1453-21

at 74, we conclude the most prudent course of action is to remand this matter for resentencing. At that time, the trial court will have the opportunity to address these various gaps and legal misstatements within its analysis. The parties may also update the trial court on defendant's activities and behavior within the intervening years since the December 2021 sentencing. State v. Randolph, 210 N.J. 330, 354-55 (2012). We do not intimate any views on how the resentencing should turn out.

Remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION