STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
KENNETH HARDISON AND JERRY JACKSON,
DEFENDANTS-RESPONDENTS.

Argued March 19, 1985—Decided June 6, 1985.

*Gilbert G. Miller,* Deputy Attorney General, argued the cause for appellant (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *Miller* and *Jane A. Grall,* Deputy Attorneys General, of counsel and on the briefs).

*Robert A. Jacobson,* Designated Counsel, argued the cause for respondent Kenneth Hardison (*Joseph H. Rodriguez,* Public Defender, attorney).

*David S. Lieberman,* Designated Counsel, argued the cause for respondent Jerry Jackson (*Joseph H. Rodriguez,* Public Defender, attorney).

The opinion of the Court was delivered by

O'HERN, J.

 This appeal concerns the circumstances under which a conviction for a criminal conspiracy and a completed offense that was an object of the conspiracy will merge. Specifically, the appeal concerns *N.J.S.A.* 2C:1–8a(2), which provides that a defendant may not be convicted of more than one offense if "one offense consists only of a conspiracy or other form of preparation to commit the other." We hold that if the conspiracy proven has criminal objectives other than the substantive offense proven, the offenses will not merge. In this case the conviction does not establish that the conspiracy embraced criminal objectives in addition to the offense proven. Hence, we affirm the judgment below that merged the conviction of conspiracy with the completed offense.

I

The case arises from two incidents, commencing on the evening of November 19, 1980. At approximately 11:30 p.m., four men entered the Lincoln Cafe in New Brunswick. After about twenty minutes, when the crowd had thinned out, one of the defendants pulled out a gun, pointed the gun at the bartender and forced him to lie face down behind the bar. Two of the men herded the two remaining patrons, a man and a woman, into the bathroom. The four cleaned out the cash register, and took the bartender's watch and the woman's purse. All three victims were then locked in the men's room with a cigarette machine in front of the door. The four fled.

Within minutes the bartender pushed the door open and alerted the New Brunswick police. They came immediately to the scene, gathered information, and obtained identification of the defendants. The police learned that the four men had fled in a red and white Cadillac.

Before they were able to return to the New Brunswick stationhouse, the police heard on the radio that a robbery had taken place at the Edison Motor Lodge, north of New Brunswick on Route 1. Edison officers on patrol had spotted a suspicious car traveling on Route 1 with its lights off. They began to follow the car. They soon heard on the police radio that a robbery had taken place at the Edison Motor Lodge. They learned as well that a red and white Cadillac had been involved in a robbery in New Brunswick. Other police joined the chase. A high-speed pursuit took place up Route 1 and onto the Garden State Parkway. The chase ended when the car ran into a cement divider at Parkway Exit 131 in Clark Township.

At the Edison Motor Lodge, the night manager reported that two men had come into the premises and asked about the price of a room. They went out, came back in with a gun, and robbed him at gunpoint of the motel's property. One of the defendants threatened to kill him; the other brutally assaulted him with brass knuckles, shattering his teeth.

Hardison and Jackson were found within close proximity of the car that had crashed in Clark Township. They were taken to the Clark police station. The woman's purse was retrieved from the car as was a key to the Edison motel room. New Brunswick police took the three witnesses from the Lincoln Cafe to the Clark police station where they were shown Hardison and Jackson alone with a group of police officers. They identified Hardison and Jackson as being involved in the Lincoln Cafe robbery, although neither was identified as the gunman. The night manager at the Edison motel did not identify Hardison and Jackson on that night. He was shown the defendants later. He identified them as his assailants. Two other suspects were soon apprehended.

The four were charged with conspiracy to commit robbery, four counts of robbery of the three people in the tavern and the night manager at the motel, possession of a gun for an unlawful purpose, aggravated assault of the night manager; and Hardison was charged with possession of brass knuckles for an unlawful purpose. The trial of two co-defendants was severed. Hardison and Jackson went to trial together.

The jury acquitted these two defendants of the robbery of the Lincoln Cafe, but convicted them on all other charges. Each was sentenced to an aggregate term of twenty years with five years of parole ineligibility. Separate and consecutive sentences were imposed on the conspiracy and robbery counts. On appeal, the Appellate Division, in two separate opinions, affirmed on all issues but merger, concluding that because the illegal agreement included robbery and the jury found defendants guilty of the motel robbery within the ambit of the conspiracy, the convictions for both the conspiracy and the robbery were barred. It also ruled that the convictions of unlawful possession of a handgun and robbery should be merged. Both the State and the defendants petitioned for review. We granted the State's petition for certification, limited solely to the issue of whether the conviction for conspiracy to commit robbery should have merged with that of armed

robbery. 99 *N.J.* 154 (1984). The defendants' cross-petitions were denied, 99 *N.J.* 155 (1984). We now affirm.

## II

The law of conspiracy serves two independent values. First is the protection of society from the danger of concerted criminal activity. *See Callanan v. United States,* 364 *U.S.* 587, 593, 81 *S.Ct.* 321, 325, 5 *L.Ed.*2d 312, 317 (1961). The second aspect is that conspiracy is an inchoate crime. "This is to say, that, although the law generally makes criminal only antisocial conduct, at some point in the continuum between preparation and consummation, the likelihood of a commission of an act is sufficiently great and the criminal intent sufficiently well formed to justify the intervention of the criminal law." *United States v. Feola,* 420 *U.S.* 671, 694, 95 *S.Ct.* 1255, 1268, 43 *L.Ed.* 2d 541, 558 (1975) (citing Note, "Developments in the Law— Criminal Conspiracy," 72 *Harv.L.Rev.* 920, 923–925 (1959)). Thus, the law of conspiracy identifies the agreement to engage in a criminal venture as an event of sufficient threat to social order, therefore permitting the imposition of criminal sanctions for the agreement alone, regardless of whether the crime agreed upon actually is committed.

In New Jersey, as elsewhere, prior to the adoption of the 1979 Code of Criminal Justice, *N.J.S.A.* 2C:1–1 to 2C:98–4 (the Code), the law traditionally considered conspiracy and the completed substantive offense to be separate crimes. *State v. Cormier,* 46 *N.J.* 494, 501 (1966); *Callanan v. United States, supra,* 364 *U.S.* at 593–94, 81 *S.Ct.* at 325, 5 *L.Ed.*2d at 317. Accordingly, the conspiracy to commit an offense and the subsequent commission of that crime normally did not merge. *Pinkerton v. United States,* 328 *U.S.* 640, 643, 66 *S.Ct.* 1180,

1181, 90 *L.Ed.* 1489, 1494 (1946); *State v. Oats*, 32 *N.J.Super.* 435, 439–40 (App.Div.1954).[1]

The reason for the rule was the common law's deep distrust for criminal combinations. The group activity was seen as posing a "greater potential threat" to the public than individual crime. *Callanan v. United States, supra*, 364 *U.S.* at 593, 81 *S.Ct.* at 325, 5 *L.Ed.*2d at 317.

> For two or more to confederate and combine together to commit or cause to be committed a breach of the criminal laws is an offense of the gravest character, sometimes quite outweighing, in injury to the public, the mere commission of the contemplated crime.
>
> [*United States v. Rabinowich*, 238 *U.S.* 78, 88, 35 *S.Ct.* 682, 685, 59 *L.Ed.* 1211, 1215 (1915).]

Deeply rooted in the fear of criminal political conspiracy, the substantive crime of conspiracy became superimposed on offenses having no such political motivation. *See Krulewitch v. United States*, 336 *U.S.* 440, 445, 69 *S.Ct.* 716, 719, 93 *L.Ed.* 790, 795 (1949) (Jackson, J., concurring). The crime took on a life of its own. At common law, and under some statutes, the combination could be a criminal conspiracy even if it contemplated only acts that were not crimes at all when perpetrated by an individual, or by many acting severally, or could result in a conspirator being found guilty not only of the conspiracy but of a completed offense even when the accused did not participate in the substantive offense. *Pinkerton v. United States, supra*, 328 *U.S.* at 644–45, 66 *S.Ct.* at 1182–83, 90 *L.Ed.* at 1495.

In addition to its substantive overlay, the crime had distinct procedural advantages including the ability to use the statements of a co-conspirator made during and in furtherance of a conspiracy, the ability to try co-conspirators jointly, flexibility in the selection and place of trial, and finally, the ability to

---

[1]This had not always been the case. Under early common law, a conspiracy—which constituted a misdemeanor—was said to merge with the completed felony which was its object. As these common-law procedural distinctions disappeared, the merger concept lost significance, and it was abandoned for the most part. *Callanan, supra*, 364 *U.S.* at 589–90, 81 *S.Ct.* at 322–23, 5 *L.Ed.* 2d at 315.

establish the existence of such an agreement through circum-
stantial evidence. *See* W. LaFave & A. Scott, *Criminal Law,*
§ 61, pp. 455–59 (1972 ed.); *see also People v. Carter,* 415
*Mich.* 558, 330 *N.W.*2d 314 (1982) (direct proof of agreement not
required; conspiracy may be established by circumstantial evi-
dence); *Harrison v. United States,* 7 *F.*2d 259 (2d Cir.1925)
(due to ability of establishing existence of agreement through
circumstantial evidence and other advantages, conspiracy has
been characterized as the favorite of prosecutors).

In this setting, there was perceived a danger of punishment
for mere criminal intent with juries unable to separate individu-
al guilt from guilt by association. The drafters of the Ameri-
can Law Institute's 1962 Model Penal Code undertook the
"difficult task of achieving an appropriate balance between the
desire to afford adequate opportunity for early law enforce-
ment efforts and the obligation to safeguard" individual rights.
Note, "Conspiracy: Statutory Reform Since the Model Penal
Code," 75 *Colum.L.Rev.* 1122, 1123 (1975).

The drafters of the New Jersey Criminal Code substantially
adopted the approach of the Model Penal Code. They under-
took, in the words of the drafters, to "meet or mitigate these
objections and * * * then go on to develop a basic framework
for the development of a law of conspiracy." II *New Jersey
Criminal Law Revision Commission: Commentary* p. 126
(1971) (hereinafter cited as *Code Commentary* ). Our Code
recognizes the dual conception of the offense (1) to reach
further back into preparatory criminal conduct than attempt,
and nip the crime before its inception, and (2) to provide
additional means of facilitating prosecutions, striking against
the special dangers of group criminal activity. *See id.* It
balances it with fairness thus:

> The [Code] embraces this conception in some part but rejects it in another.
> When a conspiracy is declared criminal because its object is a crime, we think it
> is entirely meaningless to say that the preliminary combination is more danger-
> ous than the forbidden consummation; the measure of its danger is the risk of
> such a culmination. On the other hand, the combination may and often does

have criminal objectives that transcend any particular offenses that have been committed in pursuance of its goals.

[*Id.* at 127–28.]

The Code's resolution then is to permit cumulative sentences when the combination has criminal objectives beyond any particular offense committed in pursuance of its goals. Unlike the common-law distinction between the grades of an offense that treats a conspiracy as a misdemeanor and the substantive crime as a felony, the Code grades the conspiracy by the nature of the offense contemplated. *See N.J.S.A.* 2C:5–4. Thus, a conspiracy to commit robbery would be graded, for purposes of punishment, as a robbery, and would carry the same sentence as provided in *N.J.S.A.* 2C:15–1b. Since, under the Code, the conspiracy is punished in the same degree as the substantive offense, when the preliminary agreement does not go beyond the consummation, double conviction and sentence is barred by *N.J.S.A.* 2C:1–8a(2).

The Code takes the view that in this sense conspiracy is similar to attempt, which is a lesser-included offense of the completed offense. A conviction of the completed offense will adequately deal with the conduct. The Code's drafters were equally explicit that "[t]his is not true, however, where the conspiracy has as its objective engaging in a course of criminal conduct since that involves a distinct danger in addition to that involved in the actual commission of any specific offense." *Code Commentary* at 18–19. The Code recognizes the grave dangers that organized criminal activity poses to society. *See N.J.S.A.* 2C:5–2g (conspiracy conviction of leader of organized criminal activity does not merge with crime constituting racketeering activity under *N.J.S.A.* 2C:41–1). Therefore, the limitation of the Code is confined to the situation in which the completed offense was the sole criminal objective of the conspiracy. "There may be conviction of both a conspiracy and a completed offense committed pursuant to that conspiracy if the

prosecution shows that the objective of the conspiracy was the commission of additional offenses." *Code Commentary* at 19.[2]

### III

Turning to the record before us, we must determine whether the judgment of conviction establishes that the conspiracy had additional criminal objectives other than the completed offense. For purposes of analysis, we shall view the indictment as charging two robberies—one at the Lincoln Cafe and another at the Edison Motor Lodge—and a conspiracy.[3] The jury acquitted the defendants of the incident at the Lincoln Cafe, but convicted them of robbery and assault at the Motor Lodge and of conspiracy. The question comes down to this: Does the jury verdict establish that Hardison and Jackson conspired to commit the Lincoln Cafe Robbery?

The State contends that it does, arguing that there was evidence from which the jury could have inferred that the four defendants traveled from Paterson to New Brunswick for the purpose of committing the crime; and that although they were not the triggermen at the cafe, they were part of the conspiracy. No overt act need be proven to convict of conspiracy to

---

[2]Although the Code Commentary speaks in the singular, if the conspiracy embraced multiple criminal objectives, convictions of all the offenses contemplated would invoke the same considerations.

[3]The indictment charged these defendants and the two others with eight counts of crime. The first count was conspiracy to commit robbery; the second, third and fourth counts were robbery of the bartender and two patrons at the Lincoln Cafe in New Brunswick; the fifth count was possession of a weapon for an unlawful purpose; the sixth count was aggravated assault against the manager of the Edison Motor Lodge; the seventh count was robbery of the manager; the eighth count charged Hardison alone with possession of brass knuckles. As noted, the trials of the two co-defendants were severed. One count of robbery of a patron was dismissed since no theft from him occurred. The jury acquitted Jackson and Hardison of the Lincoln Cafe robbery, but convicted them of robbery and aggravated assault of the manager of the Edison Motor Lodge, illegal possession of the gun and conspiracy; and convicted Hardison of possessing the brass knuckles.

commit a crime of the first or second degree. *N.J.S.A.* 2C:5–2d. The State points to one aspect of the charge that suggested that unless there was a knowing agreement between the parties to participate in both robberies, the jury should acquit them on the charge of conspiracy. Yet, other provisions of the charge specifically authorize the jury to find the defendants guilty of conspiracy even if it embraced only the incident at the Edison Motor Lodge. In part, the court charged the jury:

> If, however, you found that * * * these defendants did not enter a conspiracy or agreement to commit a crime of robbery at the Lincoln Cafe, you may then consider whether or not subsequent to that they formed a conspiracy or agreement to commit a crime at the motel.
>
> If there was one overall conspiracy that covered both robberies, then you may find them guilty.
>
> If you found that they formed a conspiracy or agreement to rob only the motel, you may still find them guilty if you are satisfied as to each and all elements of the crime beyond a reasonable doubt.

Of particular significance too is the fact that although conspiracy was the first offense charged in the indictment, it was not the first offense considered by the jury. The court opened its charge by reading the indictment and stated:

> First it simply says that on the day in question these four gentlemen got together and conspired or agreed with one another to commit the crime of robbery later that day.

The court did not address the substance of the offense further at that time, and, after charging generally with respect to the burden of proof, demeanor, identification, reasonable doubt, and circumstantial evidence, addressed the substantive offenses before turning to the liability of the defendants as conspirators or accomplices. It explained generally robbery, theft, and aggravated assault. The court concluded by stating:

> [T]he last charge that I am going to charge you about, but which is the first charge in the indictment, is called conspiracy, and then that is that these persons agreed to commit a criminal act.

It then discussed the substance of the offense. The defense strategy at trial had focused upon the fact that Hardison and Jackson were the unwitting companions of the real perpetrators in the Lincoln Cafe incident; that they had been with them but had no intent to rob. The witnesses at the cafe did not identify

Hardison or Jackson as the triggermen. It was the night manager of the Edison Motor Lodge who positively identified Hardison and Jackson as his assailants, describing Jackson as the gunman and Hardison as the one who had struck him with the brass knuckles.

The jury was given nineteen questions to answer dealing with the various counts. (The uneven number was due to the brass knuckles count that applied to Hardison alone. The number of the questions exceeded the counts of the indictment because of the possibility of verdicts in first or second degree.) Basically, the jury was asked: did the defendants commit robbery of the bartender and the patron at the Lincoln Cafe; did they commit robbery or assault of the night manager of the Edison Motor Lodge; did they possess a weapon? Finally they were asked to answer a last question "as to the charge of conspiracy to commit robbery," did they find the defendants not guilty or guilty?

Of course, we will not look behind a guilty verdict if there is legally sufficient evidence to sustain it, *State v. Reyes*, 98 *N.J.Super.* 506 (App.Div.), certif. den., 51 *N.J.* 582 (1968), but in determining the basis of a jury verdict, courts may consider "the manner in which the case was sent to the jury." *Stromberg v. California*, 283 *U.S.* 359, 368, 51 *S.Ct.* 532, 535, 75 *L.Ed.* 1117, 1122 (1931). In this case, the manner is suggestive that the jury's finding of conspiracy did not embrace the Lincoln Cafe robbery.

First, the jury asked to be recharged only on the question of accomplice liability. It was specifically charged again:

A person is legally accountable for the conduct of another, if he is an accomplice of such another person in the commission of a crime or he is engaged in a conspiracy with such other person.

Now, how do we know what is an accomplice? Conspiracy you're going to have to decide. A person is an accomplice of another in a commission of an offense if, with the purpose of promoting or facilitating the offense, he aids, agrees or attempts to aid such another person in the planning or committing of it.

The jury rendered its verdict, not by reference to the counts of the indictment, but by reference to the questions put to them. The jury was polled as to each of the questions. As to the questions of the robbery of the bartender and the patrons at the Lincoln Cafe, the verdict was "not guilty." Had they conspired to commit that offense, the charge on accomplice liability would have suggested a verdict of guilt. As to the questions concerning the robbery and aggravated assault of the night manager and the unlawful use of a weapon, the verdict was guilty. The next question as to each was:

THE COURT: As to the charge of conspiracy to commit robbery, how do you find the defendant * * *?

THE FOREMAN: We find the defendant * * * guilty.

On Jackson's motion to set aside the verdict of conspiracy for insufficient evidence, the prosecuting attorney was quite candid to express his understanding of the jury verdict:

Briefly, your Honor, the conspiracy, as far as I can see, is quite logical. Obviously the jury—and as I recall the Indictment spelled out two conspiracies—4 they could have believed there was a conspiracy on the way down from Paterson, the plan to rob the New Brunswick Bar and another plan as they drove down Route 1 and saw a clerk alone in a motel to rob the motel. Obviously the jury did not for one reason or another convict Mr. Jackson of any complicity or activity as far as the bar was concerned in New Brunswick. Perhaps they didn't believe there was any discussion on the way down. Perhaps they believed that he did not know what was going to happen up there.

But just as obviously, they did find him culpable as far as the motel was concerned. There was some testimony about statements that had been made by one or another of the defendants that they saw [the night manager] alone and they went in there with the purpose to rob the motel.

The trial court, in denying the motion, concluded that it was satisfied "the facts are such that a reasonable jury on a case

---

4The indictment did not spell out two conspiracies, although it referred to events in New Brunswick and Edison. *N.J.S.A.* 2C:5–2c specifically states that a conspiracy to commit multiple crimes is only one conspiracy. Thus, in this case the first count of the indictment charged that the defendants, "on or about the 19th day of November, 1980, in the City of New Brunswick and the Township of Edison, in the County of Middlesex aforesaid and within the jurisdiction of this Court, did unlawfully and with the purpose of promoting or facilitating the commission of the crime of Robbery, conspire with each other * * *."

could have found and as in fact I find they did here, determine at the very least that there was a conspiracy as to the Edison robbery." The same logic would appear to apply to Hardison.

■ Based upon this record, we cannot conclude that the judgments establish that the preparatory conduct proven had other or further criminal objectives than the completed robbery. Hence, pursuant to the provisions of *N.J.S.A.* 2C:1–8a(2), the Appellate Division correctly ordered that the convictions should be merged.

It may be that in another case the proofs will be susceptible to a contrary conclusion. The problem does not admit of easy solution. As noted, the Code specifically mandates that a conspiracy with multiple criminal purposes be regarded as a single conspiracy. *N.J.S.A.* 2C:5–2c. Our law has disfavored jury interrogatories in criminal cases. *State v. Simon,* 79 *N.J.* 191 (1979). What such disfavor seeks to avoid is the "step by step" march of the jury toward a finding of guilty by judicial marshalling of facts. *United States v. Spock,* 416 *F.*2d 165, 182 (1st Cir.1969).

That fear would be much minimized if, only after a general verdict of guilt of criminal conspiracy involving multiple crimes, inquiry were made of the jury as to the substantive offenses embraced by their verdict. "This approach enables the jury to perform its generalized task first" responding to such an inquiry only after it has initially found all the elements of the crime of conspiracy. *United States v. Ruggiero,* 726 *F.*2d 913, 928 (2nd Cir.1984) (Newman, J., concurring in part) (in complex "RICO" trials it would be useful to put such special interrogatories to a jury to determine what predicate acts were found to have been the basis of conspiracy). There may be occasions when a defendant will join in making such an inquiry. *See United States v. Ogull,* 149 *F.Supp.* 272 (S.D.N.Y.1957), aff'd *sub nom. United States v. Gernie,* 252 *F.*2d 664 (2nd Cir.), *cert. den.,* 356 *U.S.* 968, 78 *S.Ct.* 1006, 2 *L.Ed.*2d 1073 (1958).

We are not called upon to examine such a resolution here. In this case, since we are satisfied that the conviction did not establish such multiple purposes, the judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice WILENTZ, and Justices CLIF-FORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed* —None.