**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5301-15T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ANDREW E. JOHNSON, JR.,

     Defendant-Appellant.

_____

Submitted December 6, 2018 – Decided August 9, 2019

Before Judges O'Connor and DeAlmeida.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Indictment No. 13-04-1422.

Joseph E. Krakora, Public Defender, attorney for appellant (Michele A. Adubato, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Sara M. Quigley, Deputy Attorney General, of counsel and on the briefs).

Appellant filed a pro se supplemental brief.

PER CURIAM

A jury convicted defendant Andrew E. Johnson, Jr. of two counts of first-degree armed robbery, N.J.S.A. 2C:15-1; three counts of second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2 and 2C:15-1; one count of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); three counts of second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); three counts of second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); one count of third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2); three counts of third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d); one count of third-degree attempted theft, N.J.S.A. 2C:20-2(b)(2)(d); five counts of fourth-degree aggravated assault (pointing a firearm), N.J.S.A. 2C:12-1(b)(4); three counts of fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d); and one count of fourth-degree criminal mischief, N.J.S.A. 2C:17-3(a)(1).

After merging certain convictions, defendant was sentenced to an aggregate term of forty-one years in prison. Defendant appeals from his convictions and sentence. In counsel's brief, defendant raises the following points for our consideration:

> POINT I: DEFENDANT'S PRETRIAL MOTION
> FOR SEVERANCE OF THE ROBBERY COUNTS

A-5301-15T4

SHOULD HAVE BEEN GRANTED BY THE COURT.

POINT II:  THE OUT-OF-COURT POLICE IDENTIFICATIONS MADE UNDER IMPERMISSIBLY SUGGESTIVE CIRCUMSTANCES SHOULD HAVE BEEN EXCLUDED FROM EVIDENCE.

POINT III:  COMMENTS MADE BY THE PROSECUTOR DURING THE SUMMATION CONCERNING FACTS NOT IN EVIDENCE WERE GROSSLY PREJUDICIAL AND DEPRIVED DEFENDANT OF A FAIR TRIAL.

POINT IV:  THE ADMISSION OF CERTAIN INFLAMMATORY EVIDENCE DEPRIVED DEFENDANT OF A FAIR TRIAL.

POINT V:  IT WAS ERROR FOR THE SENTENCING COURT TO FAIL TO MERGE CONSPIRACY AND AGGRAVATED ASSAULT WITH THE ROBBERY OFFENSES.

POINT VI:  THE AGGREGATE SENTENCE OF THIRTY-SEVEN YEARS WITH EIGHTY-FIVE PERCENT PAROLE INELIGIB[I]LITY WAS EXCESSIVE AND SHOULD BE MODIFIED AND REDUCED.

After the State filed its brief, defendant filed a supplemental letter brief through counsel.  The supplemental brief noted the State issued a subpoena to obtain his cell phone records, which the State then used at trial to show he was one of the perpetrators involved in the subject crimes.  Counsel argues the State

should have obtained such records by securing a search warrant, and that its failure to do so warrants a reversal of his convictions. This issue was not raised before the trial court.

In his supplemental pro se brief, defendant advances the following three arguments, although his second and third points were raised in counsel's initial brief:

> POINT I: TRIAL COURT'S REPEATED USE OF THE AMBIGUOUS PHRASE "AND/OR" IN THE JURY INSTRUCTION ON POSSESSION OF A DEADLY WEAPON WAS PLAIN ERROR. (Not raised below).
>
> POINT II: THE TRIAL COURT ERRED IN THE DENIAL TO NOT [sic] SEVER THE INDICTMENT.
>
> POINT III: THE IDENTIF[I]CATION OF JARELL MARSON AND RICARDO RIVERA SHOULD HAVE BEEN SUPPRESSED DUE TO THE FACT THEY WERE THE PRODUCT OF COERCION AND NOT INDEPENDENTLY MADE BUT IMPOSED ON THEM BY THE POLICE.

Having reviewed the briefs, the record, and applicable legal principles, we affirm the convictions. For the most part, we affirm defendant's sentence; however, we determine certain counts must merge with others and the sentences imposed on them must be vacated. We remand this matter for correction of the judgment of conviction.

4

We summarize the pertinent evidence relevant to the claims raised on appeal. Co-defendant Ricardo Rivera, Jr., testified that he, defendant, and co-defendant Jarell A. Marson were friends and, on August 2, 2012, carried out a plan to rob a 7-Eleven in Cherry Hill for the purpose of stealing money. Consistent with that plan, Rivera waited in his car as the getaway driver, while defendant and Marson entered the 7-Eleven to execute the robbery. When defendant and Marson returned to the car, they told Rivera they stole $300 from the cash register. Rivera was given sixty dollars and the other two split the remaining proceeds taken from the register.

Marson also testified that he and defendant entered the 7-Eleven between 11:00 p.m. and midnight. When they entered the store, he was carrying a metal pipe and defendant a gun, and their faces were covered. While defendant pointed the gun at a clerk and Marson held up the pipe "like a bat," defendant demanded the clerk tell them where the safe was located. When the clerk did not respond, defendant hit the clerk's head with the gun and Marson struck him on the head with the pipe.

The clerk fell to the floor and began bleeding from the back of his head. Notwithstanding his condition, defendant grabbed the clerk by his arm, dragged him to the back of the store where an office was located, and demanded the clerk reveal the location of the safe. The clerk managed to get up, go to, and open the cash

registers. Marson grabbed money from the registers, and he and defendant ran from the store and got into Rivera's car. The clerk's testimony of what occurred in the 7-Eleven was consistent with Marson's, although the clerk added that because they were masked, he could not identify his assailants. The clerk further noted he called the police after Marson and defendant ran from the store.

Rivera testified that after defendant and Marson robbed the 7-Eleven, the three discussed robbing a Wendy's in the same municipality. They decided to carry out their plan at 2:00 a.m., when the restaurant was closing. Like the first robbery, they agreed Rivera would wait in his car nearby as the other two entered and robbed the Wendy's. Marson testified that when he and defendant got to the restaurant, Marson was carrying the same pipe and defendant the same gun they had when they entered the 7-Eleven earlier. Both were dressed in dark clothing and their faces were covered.

Marson further testified that when he and defendant crossed the parking lot toward one of the doors at Wendy's, defendant pointed the gun at and Marson held the pipe in a "swinging manner" near an employee who was outside of the building, and "pretty much, like, forced him back into the building." Other employees coming out of the door were forced back inside, as well, as defendant pointed the gun at

6

them. Marson told who he believed was the manager of Wendy's to turn off the alarm. Meanwhile, defendant brandished the gun at the other employees.

Marson testified he and defendant went to an office in the restaurant and told the manager to open the door, but the manager did not have the key. Marson hit his pipe against and defendant shot through a window in the door, causing the window to break and enabling the manager to reach through the window to open the door from the inside. While pointing a gun at them, defendant made the employees and manager go into the office. Then, while specifically pointing the gun at the manager, defendant told him to open the safe. The manager complied and pulled money out of the safe. Defendant and Marson took approximately $500 of the money removed from the safe, fled the restaurant, and got into Rivera's car, which was parked at a predetermined location. Rivera was given a portion of the robbery proceeds, and Marson and defendant split the rest.

Testimony provided by Wendy's manager was essentially consistent with Marson's; the manager added he contacted the police as soon as Marson and defendant fled. However, because defendant and Marson's faces were covered, the victims of the robbery could not identify them.

Marson testified that on August 5, 2012, he, defendant, and Rivera discussed robbing another entity. Rivera again agreed to be the driver of the getaway car.

A-5301-15T4

While the three were riding in Rivera's car, they spontaneously decided to rob another 7-Eleven in Cherry Hill, which was different from the one they had robbed three days before. Rivera dropped Marson and defendant off and the two approached the store.

Marson noted that, like the first two robberies, he and defendant wore dark clothing and their faces were covered. Marson carried the same metal pipe and defendant the same gun. As defendant reached for the door handle, Marson saw a clerk inside of the store and noticed his "arm reach down" to press what Marson surmised was an alarm. Marson then heard an alarm go off. Meanwhile, defendant had tried to but was unable to open the door because it was locked. Marson and defendant ran to where Rivera was waiting and the three drove off.

Police officer Joseph Hurley testified he was in his patrol car when he observed Rivera's car stopped in the middle of a road, although the car proceeded forward when Hurley's patrol car got behind Rivera's. Then, at one point, Rivera took off at a high rate of speed. The officer activated his overhead lights and siren, but Rivera did not stop and a chase ensued.

Eventually, Rivera slowed down and defendant jumped out of the car. Rivera then brought his car to a stop. By then, the back-up assistance Hurley had called for

arrived. When the police approached the car, they observed a gun on the floor in front of the passenger's seat and arrested Rivera and Marson.

In addition to other evidence, a search of the car revealed a metal pipe, as well as a cell phone that belonged to defendant. Marson and Rivera ultimately gave statements confessing their and implicating defendant's involvement in the two robberies and the attempted robbery. Marson and Rivera subsequently pled guilty to various charges and, as part of their plea agreement, consented to testify against defendant.

## II

## A

As noted, among other charges, defendant was convicted of committing one count of first-degree robbery at 7-Eleven on August 2, 2012, and one count of first-degree robbery at Wendy's the following day. Although charged with first-degree robbery in connection with the incident at 7-Eleven on August 5, 2012, he was found not guilty of that offense; however, he was found guilty of third-degree attempted theft. Before trial, defendant unsuccessfully moved to sever the three counts of robbery.

On appeal, defendant contends the court erred when it denied his motion. Defendant maintains the offenses arising out of each incident should have been tried

separately, so that the jury would not conclude he had a propensity to engage in criminal conduct. He claims that at the time the motion was argued, it was known the co-defendants were willing to provide testimony of defendant's participation in all three incidents. Therefore, in order to prove defendant guilty of any one of the robberies, it was unnecessary to introduce evidence of the other two. The State argues the trial court did not err when it denied the severance motion, thus permitting evidence of all three robberies at trial, because such evidence established motive, common scheme, plan, and defendant's identity, given the jury might have rejected the co-defendants' testimony on credibility grounds.

Whether a severance motion should be granted is within the trial court's discretion, and we defer to that decision, absent an abuse of that court's discretion. State v. Chenique-Puey, 145 N.J. 334, 341 (1996). Generally, offenses "of the same or similar character" or "based on the same act or transaction or on 2 or more acts or transactions connected together or constituting parts of a common scheme or plan" may be joined together in the same indictment. R. 3:7-6. However, if it "appears that a defendant . . . is prejudiced by a permissible or mandatory joinder of offenses . . . in an indictment or accusation the court may order an election or separate trials of counts . . . or direct other appropriate relief." R. 3:15-2(b).

"Central to deciding whether joinder is prejudicial is 'whether, assuming the charges were tried separately, evidence of the offenses sought to be severed would be admissible under [N.J.R.E. 404(b)] in the trial of the remaining charges.'" State v. Oliver, 133 N.J. 141, 150-51 (1993) (quoting State v. Pitts, 116 N.J. 580, 601-02 (1989)). See also Pressler & Verniero, Current N.J. Court Rules, cmt. 2.3.1 on R. 3:15-2 (2019) ("[S]eparate crimes have a sufficient nexus to each other to justify joinder if proof of one crime would be admissible as proof of the other pursuant to N.J.R.E. 404(b)."). If the evidence would be admissible at each trial, then the trial court may try the counts together because the defendant "will not suffer any more prejudice in a joint trial than he would in separate trials . . . ." State v. Coruzzi, 189 N.J. Super. 273, 299 (App. Div. 1983).

Under N.J.R.E. 404(b), evidence of other crimes, wrongs or acts is inadmissible to prove a "defendant's criminal disposition as a basis for establishing guilt of the crime charged." State v. Covell, 157 N.J. 554, 563 (1999) (citing State v. Stevens, 115 N.J. 289, 293 (1989)). However, evidence generally inadmissible under N.J.R.E. 404(b) is expressly admissible to prove other facts in issue, such as "motive, intent, plan, knowledge, identity, or absence of mistake or accident." Covell, 157 N.J. at 563-64 (quoting Stevens, 115 N.J. at 293).

To be admissible, evidence otherwise excluded by N.J.R.E. 404(b) must satisfy the four-part test set forth in State v. Cofield, 127 N.J. 328, 338 (1992). Covell, 157 N.J. at 564. Thus, for evidence of other crimes or acts to be admissible, such evidence must: (1) be relevant to a material issue; (2) be similar in kind and reasonably close in time to the offense charged; (3) be clear and convincing; and (4) have a probative value that outweighs its apparent prejudice. Cofield, 127 N.J. at 338.

Here, the trial court analyzed and applied the Cofield factors. The court found the evidence of the crimes committed during the three incidents clear and convincing, and that the probative value of such evidence outweighed its prejudice, given the evidence of the other incidents was relevant and material to identifying defendant as one of the perpetrators. Specifically, the court noted all three incidents occurred in physical and temporal proximity, shared a common motive, and bore similar characteristics revealing a common scheme or plan. The court elaborated upon those characteristics in its oral opinion, stating:

> [T]he three robberies are similar in character and are based on the same act[s] or transactions which constituted parts of a common scheme or plan, that plan being robbery. I note that all three robberies occur[red] within a five to ten mile range of each other. Each robbery included two males holding a gun and a metal [pipe] with the male wearing dark clothing

and masks to cover – each of the males wearing dark clothing and masks to cover their faces.

The choice of victims appeared to be commercial establishments. The first two robberies took place within a two hour span and the first two were located approximately five miles apart from each other.

The victims in each robbery were threatened with a hand gun and metal [pipe] and both of these weapons were used to gain access to money.

The third robbery occurred approximately three days later. It occurred on August fifth and again involved another commercial establishment using the same weapons and the same common scheme. . . .

The executions of these three crimes are of a similar fashion. All three defendants had an assignment for the execution of these robberies and the same weapons were used in each of these events. For an example[,] each party [was] assigned to enter with a weapon[] and take money or drive the getaway vehicle . . . .

You have here robberies, two of which occurred within two hours of one – of each other. You have the third one occurring within three days of the two. And as I said in each of these robberies each defendant had an assigned job for the execution of each of these robberies. And again in each robbery the assailants covered their faces and used weapons . . . .

In addition, the court found Rivera's and Marson's anticipated testimony at trial would clearly establish defendant's role in all three incidents.

In our view, for the reasons expressed in its decision, the trial court's admission of evidence of all three incidents was not an abuse of discretion under Cofield. They bore similarities that made joinder of all counts related to the two robberies and the attempted robbery appropriate, in order to show the robberies were committed by the same individuals, which included defendant.

The similarities included that Rivera drove the getaway car while Marson and defendant carried out the robberies and attempted robbery at similar commercial establishments in the same municipality. The first two robberies were just hours apart and the third incident occurred just two days later. Marson wielded a metal pipe and defendant a gun during each incident. Both were dressed in black and had covered their faces.

Even if the trial on any one of the incidents had been tried separately, evidence of the other two incidents would have been admissible under N.J.R.E. 404(b), because such evidence was probative of defendant's identity, plan, and scheme to commit the other robberies. See State v. Morton, 155 N.J. 383, 451-52 (1998).

Defendant argues that, given Rivera and Marson were going to testify and their anticipated testimony would establish defendant's role in any one of the incidents, there was no need to introduce evidence of the other two incidents. Therefore, he should have been tried for only one incident at a time. We disagree.

The jury may not have found the co-defendants' testimony defendant participated in any one of the incidents credible. Therefore, other evidence to show a common scheme or similarity among the incidents was necessary. Such evidence included the location and the timing of the other incidents, the weapons used, and the role and actions of each perpetrator. Therefore, we reject defendant's contention the trial court erred by failing to sever the three counts of robbery.

B

Defendant contends the police coerced the co-defendants into testifying at trial that defendant was one of the culprits involved in the three incidents. We reject this contention as wholly without support in the record. Defendant also contends the police failed to adhere to the holding in State v. Henderson, 208 N.J. 208 (2011), by impermissibly suggesting to the co-defendants that defendant was involved in the three incidents. We reject this contention as well, because it was well established all three defendants frequently socialized before the subject incidents and were highly familiar with each other. No amount of police suggestiveness could have influenced the co-defendants' identification of defendant.

C

For the first time on appeal, defendant argues that certain comments made by the prosecutor during her summation were grossly prejudicial and deprived him of a

fair trial. Because this argument was not raised below, we consider it under a plain error standard of review, and will reverse only if the error was "clearly capable of producing an unjust result." State v. Macon, 57 N.J. 325, 337 (1971) (quoting R. 2:10-2).

Before reciting the subject comments, we set forth an excerpt from defendant's summation:

> Mr. Johnson was not involved in these crimes with Jarell Marson or Ricardo Rivera. There is no reliable testimony before you as to who that third person was, because it was not Mr. Johnson. There is no DNA evidence, there is no fingerprint evidence, although [from] my recollection of the testimony, and it may actually I think have showed up in the videos, is that clearly with regard to the first incident at the 7-Eleven on August 2nd and with regard to what occurred at Wendy's also on August 2nd of 2012, there did not appear to be gloves worn and there did not appear to be any fingerprint evidence.
>
> . . . .
>
> Is there any testimony at all that attempts were made to fingerprint the door handles? Were there any prints at all acquired? Were there any prints attempted of the phone in the center console? Would that evidence not have been helpful? And if – or would it not at least have been helpful to know that it didn't exist? But we will never know that because they didn't do their job.
>
> . . . .

Again, we'll never know the truth. The police made up their minds. They ignored the other names. How unreasonable is it for them to investigate and do this, do it right? They failed to fingerprint the phone. . . . The lack of professionalism, the intimidation, the coercion, that's the problem with this case. And, that's – and the problem is two self-motivated liars who are willing to sacrifice an innocent man so they can get out earlier.

The comments the prosecutor made that defendant contends were prejudicial are:

Well ask yourself, I've tried enough of these cases and when I get fingerprints, this is always what's said. Well his fingerprint's in the car, but all that shows you is that he was sitting in the car at some point. Well his DNA's on a water bottle, but all that shows you is that at some point he drank from that water bottle. It doesn't put him in the car, fingerprints don't put him in the car on the fifth [of August], or the second [of August]. DNA on a water bottle doesn't put him in the 7-Eleven, or the Wendy's, or the second 7-Eleven on any date.

Defendant's specific objection to the prosecutor's comments is that the prosecutor made reference to her personal experiences, and belittled defendant's claim there was no corroborative physical evidence linking him to the crimes. The State counters that the prosecutor was merely responding to defendant's criticism of the State for failing to gather fingerprint and DNA evidence.

Even if a prosecutor's comment during summation exceeds the bounds of proper conduct, "[a] finding of prosecutorial misconduct does not end a reviewing court's inquiry because, in order to justify reversal, the misconduct must have been 'so egregious that it deprived the defendant of a fair trial.'" State v. Smith, 167 N.J. 158, 181 (2001) (quoting State v. Frost, 158 N.J. 76, 83 (1999)). "Our task is to consider the 'fair import' of the State's summation in its entirety." State v. Jackson, 211 N.J. 394, 409 (2012) (quoting State v. Wakefield, 190 N.J. 397, 457 (2007)).

Having reviewed the record, we are satisfied the prosecutor's comment observing that defendant's argument has been raised by defendants in other matters did not deprive him of a fair trial. The thrust of the prosecutor's remarks – that DNA or fingerprint evidence would not have been probative – was fair comment made in response to defendant's summation. See State v. Engel, 249 N.J. Super. 336, 379 (App. Div. 1991) (holding the prosecutor's statements in response to an attack upon the integrity of the State's investigation was not error). We are satisfied the prosecutor's comments here do not provide any basis to overturn the verdicts.

D

Defendant attacks the court's failure to merge certain offenses. With respect to the incident on August 5, 2012, among other things, the jury found defendant guilty of second-degree conspiracy to commit robbery and third-degree attempted theft. The court did not merge the latter two offenses. Defendant was sentenced to a seven-year term of imprisonment for the conspiracy conviction and to a four-year term for the attempted theft conviction. The court ordered both convictions to run consecutively to the fifteen-year term of imprisonment imposed for the first-degree robbery committed at the 7-Eleven on August 2, 2012, as well as to the fifteen-year term of imprisonment imposed for the first-degree robbery committed at Wendy's, on August 3, 2012.

On appeal, defendant maintains the trial court should have merged the conviction for conspiracy with the one for attempted theft. The State agrees both offenses should have been merged, but contends the conviction for attempted theft should have been merged with the one for conspiracy.

If a defendant has been convicted of an offense and conspiracy to commit the same offense, the conspiracy conviction merges with the completed offense. State v. Soltys, 270 N.J. Super. 182, 189 (App. Div. 1994); State v. Hardison, 99 N.J. 379, 385-86 (1985). The reason the conspiracy conviction merges with

the one for the substantive offense is that the "conviction of the completed offense will adequately deal with the conduct." Hardison, 99 N.J. at 386. However, if a defendant is convicted of conspiracy to commit an offense and a lesser-included offense, the conviction of the lesser included offense merges with the conviction for conspiracy to commit such offense. See State v. Connell, 208 N.J. Super. 688, 695 (App. Div. 1986).

Here, it is not disputed a theft or attempted theft is required for a robbery conviction. State v. Farrad, 164 N.J. 247, 257 (2000). Both theft and attempted theft are lesser-included offenses of the crime of robbery under N.J.S.A. 2C:1-8(d), because both are "established by proof of the same or less than all the facts required to establish the commission of the offense charged." N.J.S.A. 2C:1-8(d)(1). Accordingly, here, the conviction for attempted theft merges with that of conspiracy to commit robbery, and the sentence imposed for the conviction of attempted theft must be and is vacated.

Defendant was convicted of various aggravated assault charges arising out of the first two incidents. Defendant argues the convictions for aggravated

20

assault arising out of these two incidents should have been merged with the corresponding robbery conviction arising out of each robbery.[1]

The State agrees the aggravated assault convictions should merge, with the exception of counts three and four, which pertain to two of the three aggravated assaults committed at the 7-Eleven on August 2, 2012. The State maintains those two assaults were unrelated to the commission of the robbery. We disagree.

Our review of the record reveals the assaults charged in counts three and four were inflicted to effectuate the robbery; therefore, these two counts must merge with the robbery conviction that arose out of the incident at the 7-Eleven on August 2, 2012. Therefore, counts three, four, and five shall merge with count one, the count charging defendant with committing a robbery at the 7-Eleven on August 2, 2012. Counts twelve, thirteen, fourteen, and fifteen shall merge with count ten, the count charging defendant with committing a robbery at Wendy's. The sentences imposed for counts three, four, five, twelve, thirteen, fourteen, and fifteen are vacated. As a practical matter, the merger of these seven

---

[1] The counts charging defendant with aggravated assault that arose out of the incident at 7-Eleven on August 2, 2012 are three, four, and five. Those counts charging him with this offense that arose out of the incident at Wendy's on August 3, 2012 are counts twelve, thirteen, fourteen, and fifteen.

A-5301-15T4

counts does not affect the aggregate sentence, as the court ordered the sentences imposed for aggravated assault to run concurrently.

Finally, defendant contends his sentence was excessive. Defendant was sentenced to an aggregate term of forty-one years. The consecutive sentences were: fifteen years for first-degree robbery of the 7-Eleven on August 2, 2012 (count one); fifteen years for first-degree robbery of Wendy's on August 3, 2012 (count ten); four years for third-degree attempted theft at the 7-Eleven on August 5, 2012 (count twenty-one "A"); and seven years for second-degree conspiracy to commit robbery at the 7-Eleven on August 5, 2012 (count twenty-two). With the merging of the two latter convictions, defendant's aggregate term of imprisonment is thirty-seven years; the sentences on the remaining counts are to run concurrently.

We are satisfied from our review of the record that the sentence was not excessive. As for the consecutive terms of imprisonment, the court sentenced defendant in the middle range for the first-degree offenses and at essentially the midpoint range for the second-degree offense.

Although defendant was only nineteen years of age when he committed the subject offenses and had not been convicted of any offenses as an adult, the trial court considered defendant's juvenile history. The court noted defendant

A-5301-15T4

had been adjudicated a delinquent for burglary in 2008 and robbery in 2010, and served time for the latter offense at the State Home for Boys in Jamesburg for approximately thirteen months before being released on juvenile parole. While on parole he committed the subject offenses.

The court properly weighed and considered each aggravating and mitigating factor, see N.J.S.A. 2C:44-1(a) and (b), as well as the factors in State v. Yarbough, 100 N.J. 627, 643-44 (1985). The court's reasons for imposing the sentence were supported by competent and credible evidence in the record. See State v. Fuentes, 217 N.J. 57, 70 (2014); State v. Cassady, 198 N.J. 165, 180 (2009) (quoting State v. O'Donnell, 117 N.J. 210, 215-16 (1989)).

We have considered defendant's remaining arguments, and determine they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

The convictions are affirmed. The sentences are affirmed with the exception that the conviction for attempted theft shall merge with the conviction for conspiracy to commit robbery, and the sentence imposed for the conviction of attempted theft is vacated. As for the aggravated assault convictions, counts three, four and five shall merge with count one, and counts twelve, thirteen, fourteen, and fifteen shall merge with count ten. The sentences imposed for counts three, four, five, twelve, thirteen, fourteen, and fifteen are vacated. The

matter is remanded to the trial court so it may correct the judgment of conviction in accordance with this opinion.

Affirmed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5301-15T4